STEPHEN BOOTH *against* FRIEND STARR, HARRIET BOOTH, and PHILO BOOTH. (*a*)

CASE reserved.

This was a petition in chancery. It was stated in the petition, that in *June*, 1795, one *John Booth*, then in full life, but since deceased, for the consideration of 600*l.* lawful money of the state of *New-York*, by deed, with covenants of seisin and warranty, conveyed to the petitioner a certain lot of land in *Hudson*, to the the performance of which covenants, he bound himself, his heirs, executors and administrators ; that the petitioner went into immediate possession of the granted premises; that afterwards, on or about the 1st of *January*, 1806, the grantor died, and that on the 12th of *March*, 1806, *Friend Starr* and *Philo Booth*, two of the defendants, were appointed administrators of his estate ; that the estate of the deceased was represented insolvent ; that commissioners were appointed to examine the claims of creditors, and that the settlement of the estate was regularly proceeded with, in all respects, as an insolvent estate ; that prior to the 26th day of *August*, 1808, the administrators exhibited their adminis-

*A.,* in consideration of 600*l.*, conveyed a parcel of land to *B* , by deed, with covenants of seisin and warranty, and bound himself, his heirs, executors and administrators, to perform the covenants. *B.* went immediately into possession of the land. Afterwards, *A.* died ; administration of his estate was granted ; his estate was represented insolvent, and settlement of

was settled, and proceeded with, as an insolvent estate ; but on the final the estate, a surplus was left in the hands of the administrators, of the value of 2000 dollars, which was distributed to *C.*, a minor, and the only heir at law of *A.*, and which was, by the administrators, paid over into the hands of *D.*, guardian of *C.*, and by him held in trust for her benefit. *C.* had no property, except the surplus of her father's estate. After the final settlement and distribution of the estate, and after the surplus had been paid over into the hands of the guardian, *B.* was evicted from the land, by *E.*, in whom the fee of the land was vested, by priority of right and elder title. *B.* had no knowledge of the defect of his title, until the eviction ; and *C.* had no notice of her claim before the commencement of the suit. In a petition in chancery, brought by *B.* against *C.*, *D.*, and the administrators of *A.*, to obtain the surplus of *A.'s* estate in the hands of *D.*, towards satisfying the damages sustained by reason of the breach of the covenant of warranty, it was held, upon demurrer, that the petitioner was entitled to relief in equity.

Held, also, that he had no adequate remedy at law.

Held, also, that *C.* was not entitled to notice of the petitioner's claim, before the commencement of the suit.

Held, also, that it was proper for a court of chancery to adjust the account between *C.* and her guardian.

Held, also, that a court of chancery might assess the damages for the breach of *A.'s* covenant of warranty ; and that an assessment of damages by the jury, in an action at law, preparatory to an application in chancery, would be useless and unnecessary.

(*a*) *Vid. ante*, p. 275.

tration account to the court of probate, containing the particulars of all the goods, chattels, credits and estate of the deceased, and of the payments of the debts allowed by the commissioners, together with the costs and expences of settling the estate; which account was accepted and approved, by the court of probate; that after the payment of all debts, and expences of administration, there was a surplus of personal property, remaining in the hands of the administrators, of the amount and value of 2000 dollars; that prior to the day and year last mentioned, such surplus was, by order of the court of probate, distributed to *Harriet Booth,* one of the defendants, then a minor, and the only heir at law of the deceased, and which was paid over into the hands of *Starr,* who was then her guardian, by the administrators; that *Starr* received the property, and held the same as trustee of *Harriet,* and was liable to account with her therefor, his guardianship having expired.

It was further stated, that at the time of the execution and delivery of the deed, the grantor was not lawfully seised of the land, and had no right or title to the same, and had no right to convey the same; and that the title was then, and for six years before, lawfully vested, by priority of right, in one *Lucy Starr,* formerly known by the name of *Lucy Lyon ;* and that ever after the 1st of *March,* 1809, one *Eli Starr,* and said *Lucy Starr,* his wife, were the lawful owners of the land, in fee; of all which the petitioner was wholly ignorant, during the time of the settlement of the estate of the deceased, and until the 1st of *March,* 1810, when *Eli Starr* and *Lucy Starr,* by virtue of their priority of right, and elder title, entered upon the land, took possession thereof, and evicted the petitioner therefrom ; that the grantor, during his life, broke the covenants in his deed, and that his administrators had not kept and performed the same, since his decease, although duly notified. It was averred, that *Harriet Booth* was a bankrupt, and had no estate, except the surplus of her father's estate, in the hands of her former guardian. It was also averred, that by reason of the breach of the covenants in the deed, and the eviction, the petitioner had been damnified to

the amount of 5000 dollars, and that he was without remedy at law.

The object of the petition, was to obtain the property distributed to *Harriet*, which was in the hands of *Friend Starr*, as her trustee. To the petition there was a demurrer ; and the Superior Court, by agreement of the parties, reserved the question for the consideration and advice of the nine Judges.

*N. Smith* and *M. B. Whittlesey*, in support of the demurrer.

1. The petition is insufficient, because neither *Harriet Booth*, nor her guardian, have had notice of the petitioner's claim before the bringing of the suit. It is a fundamental maxim, that a party must have notice, before he can be called into a court of chancery.

2. *Friend Starr* is not now the guardian of *Harriet Booth*. That office is performed by another. *Friend Starr* has the possession of the property. *Harriet Booth* is a bankrupt. This suit, then, is a proceeding in chancery, in nature of a suit at law against a factor, to recover money in his hands belonging to an absconding debtor. Now, some principle or practice, ought to be shewn to justify such a proceeding. It is believed, that none such can be shewn ; and it is certain, that there is no statute provision on this subject.

3. Again, in this case, no rule of damages is given. The petition ought to contain as much certainty on this head, as an action at law. There is no averment in the petition, by which, the court can ascertain the value of the land. The consideration expressed in the deed does not furnish a rule of damages for a breach of the covenant of warranty.

4. A court of chancery is not the proper forum to adjust the accounts between *Harriet Booth* and her former guardian. This account can only be settled by the court of probate, or by a suit at law upon his bond.

5. But the main question in this case, is, whether a court of chancery can grant any relief ? If this claim is barred at law, by the statue of limitations, it is equally so, in equity. The court proceeded upon this principle, in a recent action at law, in favour of the petitioner against the administrators

June, 1813.

BOOTH
*v.*
STARR.

of *John Booth*, for the same cause of action which is alleged in this petition. It is important that the estates of deceased persons should be speedily and finally settled. It is better that a negligent creditor should lose his demand, than that the average of the estate should be constantly fluctuating, and the claims of heirs and legatees for ever disturbed. The quiet of the community requires, that these contingent claims should not, from time to time, be springing up. The policy of the statute of limitations, is, therefore, apparent.

The administrators of *John Booth*, must, necessarily, continue to be such, so long as the necessity of legal representatives shall exist. They are still the legal representatives of the deceased. There may be a remedy against them. If they are his legal representatives, they are bound to settle all legal claims against his estate. A claim at law can be pursued only against the legal representatives. If such representatives exist, whose powers and duties continue, let the action be brought against them : But if their powers and duties have ceased, others must be appointed. A deceased person must be represented, at law, before his estate can be taken in satisfaction of his debts.

Besides, the petitioner's claim should have been liquidated at law, in the first instance ; and if circumstances should render it necessary, a remedy might, afterwards, have been sought in chancery. The amount of damages ought to have been assessed, by the intervention of a jury, on an issue at law. A *scire facias* should then have been issued against the administrators, wherein they would have the right of shewing in what manner they had disposed of the property of the deceased ; and if they should be exonerated, then let the petitioner, with his claim thus liquidated, apply to a court of chancery.

*R. M. Sherman* and *Hatch*, contra. The petitioner's claim rests wholly upon the breach of the covenant of warranty. This claim is not barred, either at law, or in equity, as it respects the estate of the deceased. The assets, let them be in whose hands they may, are still liable. The only effect of

our statute of limitations, is to protect the administrator from the suits of creditors. The recent decision in this case, in an action at law, was not founded upon the idea that the claim was barred. That point was waived; and the court proceeded entirely upon the ground, that the administrators ought to be protected in the due performance of their duties.

The statute of limitations cannot run against a claim before it exists. The plaintiff had no knowledge of the defect of title before the eviction: And the eviction did not happen until after the final settlement and distribution of the estate. Defect of title, alone, will not sustain an action on the covenant of warranty. *Backus* v. *Cleveland, Kirby's Rep.* 36. *Pendleton* v. *Phelps,* 4 *Day's Rep.* 476.

The decisions in *Great-Britain*, under their bankrupt laws, are founded on a principle analogous to that for which we contend. *Chilton* v. *Whiffin,* 3 *Wils. Rep.* 13. *Tully* v. *Sparkes,* 2 *Stra. Rep.* 867. S. C. 2 Ld. *Raym.* 1546. 1570. *Hockley* v. *Merry,* 2 *Stra. Rep.* 1043. *Goddard* v. *Vanderheyden,* 3 *Wils. Rep.* 262.

The plaintiff's claim not being barred, he must have some remedy. It has been determined, that he has no remedy at law: The remedy, then, must be in chancery. The same difficulties will occur in any form of action at law, against the person entitled to the surplus of the estate, as would occur in an action on the covenant of warranty against the representatives of the deceased. The forms of law cannot possibly enable the plaintiff to reach this money. But a court of equity possesses powers for this purpose; and will see that justice is done to all parties. After the legatee has received money, which, in equity, belongs to another, a court of chancery will reach it, and direct it to be paid over to the creditor. 1 *Cas. in Chan.* 136. *Com. Dig.* tit. Chancery, 3 G. 3.

EDMOND, J. Admitting the facts, as stated in the petition, to be true, it is manifest, that *Stephen Booth* paid to *John Booth,* 600*l.* lawful money of *New-York;* that in exchange for this sum, *John* gave to *Stephen* a deed containing covenants

of seisin and warranty, and that this deed conveyed no title; that *Stephen* was ejected, and deprived of the land, and the purchase money; that the funds or estate of *John*, were increased to the amount of the consideration paid; that the other creditors of *John*, have been satisfied out of his estate, and that there is a surplus remaining. This sum, the heir cannot, in my opinion, conscientiously, withhold against the petitioner, unless some act or neglect of his, by force of some statute, has worked a forfeiture of his right to indemnity, to justify the detention. It is admitted, that the petitioner's claim on the covenant of seisin, is barred, by the statute, on account of his neglect to make out his claim before the commissioners; but his claim on the covenant of warranty, for damage sustained by the eviction, stands on different ground. In respect to that, it does not appear, that the petitioner, by any act, has impaired his right, or by any neglect, forfeited his claim to indemnity. The estate in question was proceeded with as an insolvent estate, under the statute, for the equal distribution of insolvent estates.

The covenant in the deed, for the quiet and peaceable enjoyment of the premises, was not broken, until the eviction by *Eli Starr* and wife, in *March*, 1810, a time long subsequent to the final settlement of the estate; when the time limited by the court of probate for exhibiting claims, had expired, and the power of the commissioners to examine and allow claims, had ceased. Within the time limited to creditors to exhibit their claims to commissioners, this claim did not exist, and under the insolvent act, an administrator has no authority to liquidate or allow any claims whatever. The petitioner, pending the settlement of the estate, in respect to his claim for eviction, was not a creditor, in any sense of the word; he had then sustained no injury, had no claim to exhibit, and is not chargeable with any neglect in respect to it. The possibility, or even probability of a future claim, does not constitute a person a creditor. The limiting clause of the statute, *tit.* 61. *c.* 1. *s.* 6., contemplates those persons only, who may have claims existing within the time limited for their exhibition; and such claims only, are expressly

barred. This section has no bearing on claims that might arise from the covenants of warranty, subsequent to the time limited for the exhibition of claims to the commissioners. If this be so, the petitioner's right is not extinguished ; his claims on the estate are not cancelled or barred by the statute, although his right to recover against the administrator, in an action at law, may be barred.

The act for the equal distribution of insolvent estates, takes for its basis, the insufficiency of the estate of the deceased for the payment of debts, and makes provision for the distribution and division of the whole. It bars all existing claims, not exhibited to the commissioners within a limited time. It gives the whole, (except an allowance to the widow, and for payment of privileged debts, and incidental charges, which are first to be paid,) to those who prove their claims before the commissioners, pursuant to the directions in the act. It requires no bond to be taken before the judge, to refund, in case after debts be made to appear. No remaining fund in the hands of the administrator, or elsewhere, to answer future contingent claims, is contemplated as possible, by the act, except in the case where a creditor, after settlement of the estate, can shew or find some other and further estate of the deceased, not before discovered and put into the inventory. In this point of view, it would have been legislating to very little purpose, after providing for a specific application of every cent of the property, to have added, that such person, as might, after such application of the whole, have claims arising out of covenants of warranty, or otherwise, and become a creditor, should for ever after be debarred of his or her debt ; or any other words of the like import. This statute, therefore, is entirely silent on the subject of future possible claims, and does not stand in the way of the petitioner's right in equity, of satisfaction out of the estate of the deceased, notwithstanding a conformity, by the administrator, in all respects, to the provisions of this act, which may operate as a complete bar to the petitioner's right of recovery in an action at law against the administrator, as such.

VOL. V. D d d

This law is equally silent on the subject of the surplus estate, after satisfaction of creditors, &c. ; and indeed, the very supposition of a surplus, is excluded by the act ; yet it is perfectly well understood in practice, that comparing the inventory with the report of the commissioners, an estate may appear to be insolvent, and must be so adjudged ; yet, when the estate comes to be sold by the administrators, by a favourable sale, the net proceeds may far exceed the amount of the widow's allowance, privileged debts, claims made out, and administration expences. This balance, without any law expressly requiring it, has usually, (and a long acquiescence seems to countenance the usage,) by order of the judge, been delivered over, by the administrator, to the heir; and in this manner, the property pursued by the petitioner, came into the hands of *Friend Starr*, as guardian to *Harriet Booth*. Where, then, is the insurmountable obstacle to the petitioner's reaching this property, by an application and decree in chancery ? His demand on the estate is just ; his claim is not extinguished ; he is not chargeable with negligence ; there is no statute to bar his claim ; he has no remedy against the administrator, as such, and no adequate remedy at law.

Several objections have been made in relation to this petition, that deserve attention.

It was contended, that *Harriet* never had notice of the petitioner's claim, before the service of the petition ; and that it would be inconsistent with the principles of equity, to bring forward a claim in a court of equity, for the breach of a covenant, or contract, of which *Harriet*, the respondent, never had notice.

I consider this objection of little importance, in view of the situation in which she stands, as stated in the petition. She is a bankrupt ; the claim is not on her personally, but on the property, as the estate of the deceased, in the hands of *Friend Starr*, the trustee of the property, nominally for her, but on the principles of natural justice, for the petitioner, as a creditor of the estate.

It was further objected, that *Friend Starr* holds this money

as guardian to *Harriet,* and as such, is holden by his bond, to account for it before the court of probate ; and that his account, as guardian, can only be adjusted before that court.

To this objection, it is a sufficient answer to say, that a court of chancery, upon a hearing on this petition, can as easily ascertain the balance, if any remains unexpended in the hands of the guardian, as the court of probate ; and any sum taken out of the guardian's hands by a decree in chancery, will be well accounted for by him before the court of probate, by producing the decree, and a justification of his conduct before any other court, so far forth, in any suit upon his bond.

Again, it was said, there is no rule of damages given in the petition ; that there is nothing stated relative to the value of the estate, at the time of the eviction. The petition states the consideration paid for the land, and avers, expressly, that by the eviction, the petitioner is damnified to the amount of 5000 dollars. This would be a sufficient averment, in an action at law.

It was further contended, that the court cannot settle the damages on a breach of covenant, without the intervention of a jury ; that the petitioner ought to have brought his action at law, recovered judgment, had the claim liquidated, execution issued, and then let the administrator shew, when called upon, what he has done with the property ; and if the administrator is exonerated, then let the petitioner with his claim, so settled, go into chancery.

If it were admitted, that a suit at law might be sustained against the administrator of an insolvent estate, for a claim that did not exist pending the settlement, it is easy to see, that the necessity of the process proposed in the objection, would bring the petitioner to the point where he now is, except as to costs. The administrator having no interest in the event of the suit, and having no funds in his hands to defray the expence of defending, would not appear to defend, at his own cost, and it would be unjust to require it of him. Judgment must, then, be by default. The jury would not be called to assess damages ; the court must assess them

June, 1813.

on an *ex parte* hearing, if at all. On return of execution, and *scire facias* against the administrator, he will be compelled to appear and defend, or be subjected to payment out of his own estate. His course will then be, to shew a full and complete disposition of the estate, and make out a good defence, at law, against the petitioner's claim. The petitioner must then abandon it, or seek redress in a court of chancery, with his claim no better liquidated and settled, than it might have been by application to a court of chancery in the first instance.

From the best consideration, therefore, I have been able to bestow on the case, I am satisfied that the petitioner is entitled to a hearing on the merits of his petition.

The other Judges concurred.

Demurrer overruled.