## Curtis Bacon *vs.* Harriet· Thorp, Executrix of Peter M. Thorp.

Where goods have been delivered by an attaching officer to a receiptor, upon an agreement that they shall be re-delivered on demand, no right of action can arise upon the contract until an actual demand has been made.

And before such demand is made the claim on the receipt is not of that positive character that it can properly be presented to or allowed by the commissioners on an insolvent estate.

Although the officer has the legal right to demand the property of the receiptor at any time, yet a demand before judgment obtained in the suit on which it was attached would be contrary to the real expectation of the parties, and the officer is under no obligation to make it. And where he makes it after the death of the receiptor and after the expiration of the time limited for the presentation of claims against his estate, the claim is properly an *after-accruing* one, and entitled to the benefit of the provisions of the statute with regard to such claims.

Commissioners on an estate represented insolvent can only allow present debts or fixed liabilities susceptible of a valuation, and can not allow contingent claims upon which it is uncertain whether the estate will ever become legally indebted.

The act of 1857, in relation to estates represented insolvent and proving to be solvent, and the liability of the surplus estate to the payment of after accruing claims, is merely declaratory of the pre-existing law.

The case of *Booth* v. *Starr*, 5 Day, 275, 419, commented upon and explained.

Where an estate, represented insolvent, has turned out to be solvent, and the administration account has been presented to the court of probate and accepted, the estate is no longer to be regarded as " depending for settlement " within the meaning of the 58th section of the " act for the settlement of estates," which provides that no suit shall be brought against the administrator while the estate is in settlement. That provision moreover relates to suits upon claims which are of such a nature that they can be pre-

sented to, and allowed by, the commissioners within the time limited for that purpose, and does not apply to claims which can not be so presented and allowed.

Where an estate represented insolvent has proved to be solvent, and the executor, having duly settled his account, has funds of the estate in his hands undistributed, and a claim against the estate has accrued after the death of the testator and has been duly exhibited to the executor within twelve months after it accrued, and payment thereof has been refused, the proper remedy for the recovery of the claim is an action at law against the executor.

Therefore, where an officer had attached property and delivered it to a receiptor who covenanted to re-deliver it on demand; and while the suit in which the property had been attached was pending the receiptor died, and his estate was represented insolvent, and commissioners were appointed and a time limited for the presentation of claims, and the officer exhibited no claim to the commissioners, and the executrix presented to the court of probate her administration account, which was allowed, and the estate turned out to be solvent, and the executrix held in her hands property of the estate undistributed; and some time afterwards, but soon after final judgment in the suit upon which the receipted property had been attached, the officer demanded of the executrix the delivery of the receipted property, and upon her refusal presented to her a claim against the estate for the amount due upon the execution issued upon the judgment;—it was held that the officer was entitled to recover the amount due upon the execution in an action of covenant against the executrix upon the receipt.

ACTION of covenant upon a receipt for property attached given to the plaintiff as marshall of the district, brought against the executrix of the receiptor.

The case was tried to the court, upon the general issue, with notice of the special matters of defence hereinafter stated. The facts, as specially found by the court, were as follows :—

On the 16th of May, 1855, Bacon, the plaintiff, as marshall of the United States for the district of Connecticut, attached certain property upon a suit in favor of Thomas A. Jenks and another against the Bridgeport Woolen Mills, a corporation located in Bridgeport. The corporation thereupon, by its president, H. W. Chatfield, its secretary, P. M. Thorp, and one of its directors, W. J. M. Knowlton, requested Bacon to permit the property to be receipted by them in their individual capacities. Bacon complied with the request. Chatfield, Knowlton and Thorp thereupon executed and delivered to Bacon the receipt in suit, and, having done

Bacon *v.* Thorp.

so, left the property in the possession of the corporation and permitted it there to remain.   The receipt, dated May 16th, 1855, after acknowledging the reception of the property as property duly attached by Bacon in his official capacity, covenants as follows :—" and in consideration of the delivery of the said personal estate to us, at our special instance and request, we jointly and severally admit that the said estate is the property of the said Bridgeport Woolen Mills, and is of the value of ten thousand dollars, and we jointly and severally agree to re-deliver the said estate to the said Bacon or his order, on demand, free from all incumbrance, depreciation, injury or loss, and, on failure thereof, to pay all damages."

The writ was duly served and returned to the circuit court of the United States for the district of Connecticut at its term holden in September, 1855.   During the pendency of the suit P. M. Thorp died.   On the 12th day of July, 1855, his will was duly approved—Harriet Thorp, the present defendant, being therein named as legatee, trustee and executrix.   On the 16th of July, 1855, she accepted her appointment as executrix and was duly qualified as such.   At the same time she represented the estate insolvent and prayed for the appointment of commissioners.

On the 23d of July, 1855, commissioners were appointed, and six months from July 24th, 1855, were allowed to creditors within which to exhibit claims against the estate, of which due notice was published; and one year was allowed to the executrix within which to complete her settlement of the estate.   On the 11th of September, 1855, the inventory was returned and accepted.   On the 10th of January, 1857, the commissioners presented to the court of probate their report, which was accepted, showing that no claims had been presented against the estate; and at the same time the executrix presented her administration account, which was accepted, showing estate in her hands amounting to more than $20,000.

At the term of the circuit court holden in September, 1856, the plaintiffs in the suit upon which the receipted

property had been attached, recovered judgment against the defendants therein for $6,293 and costs, but the defendants filed a petition for new trial, and thereupon execution was stayed. During the pendency of this petition, Bacon, on the 22nd of December, 1856, made his first demand of the executrix for the goods specified in the receipt, and upon that demand she replied that she knew nothing about it and could do nothing about it, and that she would make inquiry; and she referred him to Knowlton and Chatfield. She said, in the same connexion, that the estate had been settled according to law.

At the April term, 1857, of the circuit court, the petition for new trial was denied and execution was ordered to be issued. Execution was issued May 4th, 1857. On the 7th of May, 1857, Bacon, as marshall, with the execution and by virtue thereof, made due demand of the debtor therein named for the sums due thereon, and on the same day, and again on the 1st day of July, 1857, he made demand of Knowlton and Chatfield and of Harriet Thorp, the executrix, for the re-delivery of the receipted property; but they refused to re-deliver the same; and thereupon the execution was, on the 2nd of July, 1857, duly returned unsatisfied.

On the 10th of July, 1857, Bacon, as marshall, presented to Mrs. Thorp as executrix a formal statement of claim against the estate in his favor for damages due him by reason of non-compliance with the terms of the receipt, to the amount of the sums named in the execution with his fees. The executrix refused payment. Thereupon this suit was brought upon the 11th day of July, 1857.

It was admitted that if Bacon was entitled to recover in this suit he was entitled to recover the amount of the claim so by him presented to the executrix with interest.

Upon these facts the superior court rendered judgment for the plaintiff; and thereupon the defendant filed her motion in error.

*Dutton*, for the plaintiff in error.

1. The estate of Mr. Thorp is now in process of settle-

ment, or else it has been already completely settled. If, when this suit was brought, the estate was in process of settlement, then by the express provision of the statute, this suit is barred. Rev. Stat., tit. 14, § 58. If the estate was completely settled, then *a fortiori* the suit is barred, and it would be absurd to hold the executrix liable. After settlement she has no funds to pay with, and no protection if a suit can be brought against her. There is no provision even for a bond to her from the distributees of the surplus of an estate which has been represented insolvent,—although there is such a provision in regard to estates settled as solvent estates. Rev. Stat., tit. 14, § 51. The statute regarding distribution of the surplus of an estate which has been represented solvent, refers merely to the rules by which distribution shall be made. Rev. Stat., tit. 14, § 64. The law requiring bonds from distributees of solvent estates is not a law regulating the distribution, but a law imposing an obligation or burden upon the distributees.

2. The general object of the statute regarding insolvent estates was to have all claims that are or can be allowed at all, allowed by the commissioners. *Booth* v. *Starr*, 5 Day, 275.

3. The claim of the plaintiff existed at the death of Mr. Thorp, and therefore is barred. Rev. Stat., tit. 14, § 57. The term " creditor " in this statute is to be construed liberally, so as to cover every species of pecuniary liability which survives. *Brown* v. *Slater*, 16 Conn., 192. A claim which would sustain an action of trover could be proved before the commissioners. *Johnson* v. *Spiller*, Doug. Cas., 167. As Mr. Thorp re-delivered the receipted property to the defendants in the suit in which it had been attached, he thereupon and thereby became immediately liable to Bacon. Therefore Bacon's claim existed before Thorp's death, and is barred because it has not been presented to the commissioners. Rev. Stat., tit. 14, § 57. *Johnson* v. *Spiller*, supra. A disposition of the property by Thorp inconsistent with his covenant to re-deliver and with Bacon's right of immediate possession, was a conversion by Thorp for which *Bacon*

could have sustained trover. 1 Chitty Pl., 103, 136, 155. 2 Greenl. Ev., § 642 and note. Story on Bailments, § 93. *Seyds* v. *Hay*, 4 T. R., 260, 264. Such a disposition of the property by Thorp, rendering impossible the performance of his covenant, was a breach of covenant for which Bacon could have maintained an action. 2 Greenl. Ev., sec. 236. *Hopkins* v. *Young*, 11 Mass., 302. *Whiteman* v. *Slack*, 1 Harrington, 144.

4. The suit is barred because not brought within six months after the demand made on Mrs. Thorp, December 22nd, 1856. Rev. Stat., tit. 14, § 37.

5. The statute of 1857, does not apply to this case. The act is not expressly and necessarily retrospective, and therefore will not be construed so as to have a retrospective operation. *Mather* v. *Chapman*, 6 Conn., 54. *Plumb* v. *Sawyer*, 21 id., 351. *Dash* v. *Van Kleeck*, 7 Johns., 477. *Garrett* v. *Beaumont*, 24 Mo., 377.

*R. I. Ingersoll* and *Baldwin*, for the defendant in error.

1. The first statute which authorized a court of probate to limit a time for the exhibition of claims to the executor or administrator of a solvent estate, was enacted in October, 1782. Prior to this act creditors of solvent estates had the same time for exhibition of claims and for suits as if their debtors were living. This statute was never construed to bar claims subsequently arising : the negligent creditor only was barred. *Backus* v. *Cleveland*, Kirby, 36. *Booth* v. *Starr*, 5 Day, 419. *Griswold* v. *Bigelow*, 6 Conn., 259. It was in view of the old decisions, and in recognition of the construction which they gave to the act of 1782, that the proviso was enacted in 1821, " that when a right of action shall accrue after the death of the deceased, it shall be exhibited within twelve months after such right of action shall accrue and shall be paid out of the estate remaining after the payment of the debts exhibited in the time limited." Rev. Stat., tit. 14, § 36. See cases above cited ;—also *Brown* v. *Allen*, decided in U. S. circuit court, at New Haven, in 1835. *East Hartford* v. *Pitkin*, 8 Conn., 393. A distribution is always

subject to be broken up by the appearance and allowance of claims against the estate. *Seymour* v. *Seymour*, 22 Conn., 272. It appears to have been the intention of the legislature, not only that the construction of the acts limiting time for the exhibition of claims against solvent and insolvent estates should be the same, but also that the same law should regulate the distribution of any surplus remaining after payment of the debts and expenses. Rev. Stat., tit. 14, §§ 51, 64. In pursuance of the same intention the act of 1857 applies the proviso in sec. 36 to estates represented insolvent. Acts of 1857, p. 41.

2. Bacon's right of action accrued when demand was made by him upon the receiptors for the property and they neglected to re-deliver it—and not before. *Scott* v. *Crane*, 1 Conn., 255. *Higgins* v. *Emmons*, 5 id., 76. *Jones* v. *Gilbert*, 13 id., 507. *Clark* v. *Gaylord*, 24 id., 484. *Brown* v. *Cook*, 9 Johns., 361. *Page* v. *Thrall*, 11 Verm., 230. The right of action therefore did not arise until after the death of the testator. The claim then, having been exhibited "within twelve months after the right of action occurred," is not barred by any statute of limitations.

3. The demand made upon the executrix, December 22nd, 1856, for re-delivery of the property, was not an exhibition to her of a claim against the estate for allowance;—it necessarily preceded any right of exhibition. But if any such right had then existed, it would not have been subject to allowance or disallowance by the executrix, within the 37th section of the statute requiring suit to be brought within six months after notice of disallowance. The limitation in that section refers exclusively to estates not represented insolvent. The claim was ascertained and exhibited to the executrix while ample estate remained undistributed in her hands. Though by the will she is trustee, she holds as executrix until she gives bonds in another capacity. *Prior* v. *Talbot*, 10 Cush., 1. Even if the estate had been distributed, a court of chancery, in a case like this, would follow the assets into the hands of the distributee. *Booth* v. *Starr*, 5 Day, 275, 419. But when an estate has been represented insolvent,

and an undistributed surplus remains, the remedy for recovery of a subsequently accruing claim is by action at law. *Booth* v. *Starr*, supra. *First Cong. Society* v. *Lovell*, Brayton, 113. If there were any doubt as to the remedy, the act of 1857 removes it.

ELLSWORTH, J. On the 16th day of May, 1855, the plaintiff, as marshall of the district of Connecticut, attached and took into his possession certain articles of property, of the agreed value of $10,000, belonging to the Bridgeport Woolen Mills, on a certain writ of attachment in his hands for service. These articles are specifically enumerated in a receipt of that date signed and sealed by Thorp the defendant's testator, wherein he and two others severally covenant with the plaintiff that he will re-deliver the same to him whenever demanded. The suit was not finally terminated until May, 1857, when the plaintiff demanded the re-delivery of the goods in order that the execution, which he had received, might be satisfied therefrom ; and as said Thorp had died in the mean time, the demand was made upon Mrs. Thorp, the executrix of his will and a legatee under it, but she paid no regard to the proceeding.

The defence set up by Mrs. Thorp to the action now brought on the receipt, is, that in the court of probate she represented the estate insolvent, whereupon commissioners were appointed and a limitation fixed for the exhibition of claims—that no claims were presented and that she has settled her administration account ; and so she claims that, although there remains in her hands property inventoried at about $20,000, the plaintiff is barred of his claim against the estate.

The counsel for the plaintiff admit these facts, but insist that there is nothing in them which constitutes a bar to the action ; and this is the important question to be decided, whether, notwithstanding the non-exhibition of this claim to the commissioners, there is an insuperable difficulty in reaching the estate of the deceased in the hands of the executrix unadministered, though the estate was at first represented

insolvent. Let us look at the question on principle and in view of the authorities.

It is certain that the death of Mr. Thorp can not of itself affect the obligation entered into by him while in life, nor that of his estate. The liability remains unimpaired, and the executrix, taking the place of the debtor and having his assets, must be ready to fulfill the obligation in the same manner that the testator would have been bound to do had he continued in life. If there be any qualification or limitation in favor of the executrix which did not exist before, it must be such as is created by law. And is there any? and what is it?

General statutes of limitation apply in behalf of executors and administrators as fully as if death had not intervened. By these Mrs. Thorp can avail herself of what Mr. Thorp could have done had he remained in life, but to no greater extent. These general statutes go to the merits of the claim, and not to the time and place of presentment. They are founded in part upon a supposed loss of evidence by lapse of time, and in part on the policy of discountenancing stale and antiquated claims. The limitation which constitutes the present defence grows out of the necessity of settling estates which by reason of death or bankruptcy are brought to an abrupt close, and where there can be no further action except by a representative who is empowered by law to close the estate as soon as possible and divide it among the creditors or heirs.

The importance of this distinction will appear when we come to consider the true and proper construction and application of the statute which requires the presentation of claims to commissioners, and whether absolute and contingent debts do not stand on a very different footing, especially as to volunteers and heirs.

Our views can best be presented by examining two questions; 1st. After the expiration of the time for presenting claims to commissioners, in the case of estates represented insolvent but which turn out solvent, or to executors and administrators of solvent estates, can claims be legally presented and recovered which had no positive existence, by

reason of a contingency, until after the limitation had expired; and if so, by what mode and to whom shall they be presented for allowance and payment? 2d. If they may, is the claim of the plaintiff of that character?

It would seem to be too obvious to need argument, that there can be no neglect or omission in not presenting for allowance and payment demands which do not exist, or, if they do, are not sufficiently definite and appreciable to be capable of a just and legal adjudication, or in the words of the statute of being " proved to be justly and lawfully due." Besides, were such a presentment practicable, it could not hasten the final settlement of the estate, or in any way advance the interests of those who are to enjoy the estate. What benefit do they gain by the assumption of debts which do not exist and may never exist as a lien on the estate, or by having property retained in the hands of the executor or administrator to meet mere possibilities at a future period? How would Mrs. Thorp here have been benefitted by the commissioners allowing, as they must have done if they did anything, a debt of $10,000 against the estate in favor of this plaintiff?

As to estates not represented insolvent, the statute, (Rev. Stat., tit. 14, § 36,) expressly provides that " when a right of action shall accrue after the death of the deceased, it shall be exhibited within twelve months after such right of action shall accrue, and shall be paid out of the estate remaining," &c.; so that in such cases contingent claims, where there is not a present right of action, are not barred by the limitation, but may be presented afterwards and at any length of time not exceeding one year after the right of action accrues. This statute we consider as limiting the time to present such claims, and not as creating a right which did not exist before, as is sometimes supposed. Without the statute such future claims could have been presented to the executor or administrator at any future time, and could have been enforced where not barred by the general statute of limitations, as will appear by cases which we will hereafter refer to from our reports.

Bacon *v.* Thorp.

As to estates represented insolvent, the provisions of the statute with regard to the powers and duties of commissioners sufficiently prove that they can allow only present debts or fixed liabilities capable of a valuation. The statute (Rev. Stat., tit. 14, § 55,) provides that " the court of probate shall allow six, ten, or eighteen months, as the circumstances of the estate may require, for the creditors to exhibit their claims to the commissioners, and that the commissioners shall act upon the claims exhibited to them and allow such as shall be proved to be justly and lawfully due." This description undoubtedly includes debts payable at a future time if they are absolutely and certainly due ; for then they have a positive existence and are capable of being proved to be justly and legally due. Time of payment is not material, and the indebtedness can be measured and estimated by a known rule of law. But this is not true of mere possibilities.

Some of these cases have been before our courts for adjudication, and others of a kindred character can easily be imagined. Suppose a person to possess deeds with covenants of warranty, which covenants are not broken until long after the covenantor's estate is settled. In order to have a good claim on the covenants is it necessary that the deed should have been presented to the commissioners before breach ? Such a course would have availed nothing. Or suppose a person had issued a policy of insurance against fire and no fire had occurred until after the death of the insurer and after his estate had been settled as an insolvent estate ; or suppose he had guarantied a debt or endorsed a note which does not become payable until after his estate is settled, and not then unless there is a future demand on the maker, and a default of payment and notice of non-payment, and in some cases suit brought; or suppose one of two joint promissors in a collateral contract dies leaving the other surviving and solvent, and after this the survivor becomes bankrupt, and the estate of the deceased promissor has long been settled, but property is left in the hands of the executor or administrator ; in these and like cases of what benefit would be a presentation of such a possible claim to the commis-

sioners ?  At most it would only furnish a memorandum of
the fact of presentation, but it would not authorize the com-
missioners to allow the claim, or the executor or administra-
tor to lay aside property to pay it.

It has been said that commissioners may allow claims
against the estate contingently, and that this always should
be done in order that the estate may be provisionally settled.
But is this so?  How can commissioners adjudicate and
estimate the amount of the indebtedness in such cases?
They are, if they do anything, to find what is justly and
lawfully due.  Besides, if an indebtedness is found contin-
gently and is so reported to the court, who is to decide upon
the happening of the contingent event—an all important
fact?  Not the commissioners, for they have exhausted
their power, perhaps are dead, or gone from the country, or
become incompetent to act even if the commission be con-
sidered as still open.  Not the judge of probate, for he has
no such jurisdiction.  He has no authority to allow any
claims whatever, unless in the case of newly discovered
estate, except such as the executor or administrator may pre-
sent to him in the administration account for allowance.
No one then is left to decide the question but the executor
or administrator, and he with an interest or bias in favor of
the estate would be likely to decide against the claimant.

Look at the consequences of a contingent allowance of
claims by commissioners as applied to the present case.
Had the plaintiff demanded the re-delivery of the goods in
question immediately after Mr. Thorp's death, as it is said
he should have done, and they had not been forth-coming, as
they doubtless would not have been, the plaintiff would have
been entitled, on presenting his claim to the commissioners,
to recover $10,000, whereas only some $6,000 or $7,000 are
wanted to satisfy the judgment and execution.  I think
that in some way the executrix could have got back the
balance had it been paid, but the supposition shows the
absurdity of the premature allowance of such contingent
claims.

We think quite too much importance has been attached

to the difference or supposed difference between solvent estates and estates at first represented insolvent but which turn out to be solvent. Why should these estates be treated so differently when it is found by the probate court that they are in the same condition as to solvency? Are the holders of contingent claims to be paid in the one case and not in the other, and this too to favor volunteers or heirs? We think not; and that such has not been the practice in this state. The truth is, the executrix in this case very unnecessarily and we think improperly represented this estate to be insolvent; following a practice which has become quite too common in settling estates, and which can not receive the sanction of this court when such representation is without a reasonable evidence of its truth. But its being done should not work any injustice to a creditor situated as this plaintiff is. The executrix, as well as the probate court, by comparing the inventory with the report of the commissioners which shows that there were no debts, could see at once that the estate was not insolvent; and it should not, after the discovery, continue to be treated as such to the prejudice of creditors who could not present their claims within the time limited by the court. Indeed, in such a case it would be no more than proper, were there no other way of remedying the mischief, for the executor or administrator to correct the misrepresentation as to the future settlement of the estate which in the time of it he made in good faith simply to facilitate the settlement. But this course is not necessary, for it may be treated by the court as no longer an insolvent estate, whenever it comes to the knowledge of the court that there is property enough for all the debts; not only for those which have been reported by the commissioners but for those which may have arisen since. So just and equitable is this view of the matter, that the legislature in 1857 passed a law that such should be the case, by declaring that solvent estates and estates represented insolvent but which prove to be solvent, shall stand on the same footing in this respect. Hereafter, therefore, there can be no difficulty. Perhaps indeed we might hold that this statute is applicable to the

present case; we certainly do not decide that it is not; but we prefer to put our decision on the ground that the statute of 1857 is only declaratory of our common law. Such we believe to have been the practice and the understanding of the profession, and that at no time have contingent creditors been denied the payment of their debts out of solvent estates however represented. At all events, hereafter, an incorrect representation will produce no mischief.

We will next look at the history of some of the statutes on the subject, in connection with the course of decisions in our courts, where the matter has been repeatedly considered. These decisions go to establish the correctness of the views already expressed.

The first statute which gave authority to courts of probate to prescribe a time within which claims must be exhibited to executors and administrators on solvent estates, was passed in 1782. It provided that in case of neglect to exhibit a claim within the time prescribed, the creditor should be barred "in the same manner as is by law provided in case of insolvent estates." Prior to this there was no limitation of the time for presenting claims against solvent estates which constituted a bar to a recovery.

Under this statute it was held, as early as 1786, that none but a negligent creditor is barred by the limitation. Hence in *Backus* v. *Cleaveland*, (Kirby, 36,) the plaintiff was permitted to recover the amount of a judgment rendered after the limitation, although the suit was pending before. In *Pendleton* v. *Phelps*, (4 Day, 476,) it was held that a claim against a deceased partner, accruing in consequence of the insolvency of the surviving partner, which insolvency took place after the limitation, was not barred though not exhibited within the limitation. In *Booth* v. *Starr*, (5 Day, 419,) the estate had been represented insolvent and fully and finally settled as such; yet a surplus being left and distributed to the heir, the plaintiff was permitted in chancery to obtain payment out of the specific property, of a judgment recovered by him for a breach of warranty of the land by an ouster after the limitation had expired. This case had been

Bacon *v.* Thorp.

tried in a court of law and was there held not to be sustain-
able, not however for the reason under consideration, but for
one of an entirely different character and which is not incon-
sistent with our views, as we will show when we come to
examine the case more particularly. In *Griswold* v. *Bige-
low*, (6 Conn., 260,) it was held that a claim against an
estate which originates after and can not be ascertained and
exhibited within the limitation, is not on that account barred
and lost, but may be afterwards presented. This was a
breach of warranty by an ouster, some thirty years after the
death of the covenantor and long after the settlement of the
estate. The same doctrine was held in the case of *Brown* v.
*Allen*, (reported to us in manuscript) decided by judges
Thompson and Bristol, in the circuit court of the United
States at New Haven, in 1835. It was a suit against the
representative of a prior endorser on a note, by an after en-
dorser who had been compelled to take up the note. The
note fell due after the death of the prior endorser, and after
the expiration of the time of limitation upon his estate. The
administrator was held liable notwithstanding he relied on
the non-exhibition of the claim. The same is decided in the
case of the *First Cong. Society in Sharon* v. *Lovell*, (Bray-
ton, 113,) upon a statute which we believe to be similar to
our own. See further the opinions of Williams, J , in *East
Hartford* v. *Pitkin*, 8 Conn., 393, 403, and of Hinman, J., in
*Seymour* v. *Seymour*, 22 id., 279.

The second question to be considered is this : is the claim
of the plaintiff one of that future and contingent character,
which according to the cases can be presented after the lim-
itation has expired,—and at what time did the plaintiff's "right
of action accrue." I use the words of the statute, which
allows of the presentation of a future claim provided it be
within twelve months after the right accrues, which proviso
is as applicable, I think, to estates which turn out to be sol-
vent as to estates which have not been represented to be
insolvent.

The cases cited, as well as the reason of the thing, would
seem to settle the question in the plaintiff's favor, for, if a

judgment rendered after the limitation in a suit commenced on a contingent right, or if a claim which grows out of an insolvency of the surviving partner which happens after the limitation, or out of a breach of covenant of warranty occurring afterwards, or from the payment of a note by an endorser where there was no default or right of action before ;—if these and such like claims come under the rule with regard to contingent claims, it is not easy to see why the claim of the present plaintiff does not. Certain it is that there was no right of action against Mr. Thorp before or at the time of his death, nor against his executrix until she had refused to re-deliver to the plaintiff the articles named in the receipt. A demand was indispensable to the right of action. A demand comes clearly within the language and spirit of the covenant. Neither party alone could dispense with it or treat it as immaterial. The property is to be kept and re-delivered when demanded and not before. Mr. Thorp could no more force it upon the plaintiff at any time he saw fit, than the plaintiff could sue him for it without asking him to re-deliver it. The parties made their own contract, and neither Mr. Thorp, nor his executrix, nor the court itself, can depart from the terms of it and treat it as creating a right of action before demand and refusal. The general statute of limitations would not commence running before. Although the plaintiff could have made demand at any time he saw fit, when, on refusal, he would have had a right of action, yet, if a demand was in fact made without necessity, it would have been contrary to the understanding and expectations of the parties; for the property could not be needed until judgment was obtained against the defendants in the attachment. The very frame of the receipt, counting as it does on an attachment, and contemplating further if not protracted litigation, is abundant proof that a premature demand was not contemplated or expected. Suppose now that such a demand had been made. Mr. Thorp or his executrix must have submitted to the payment of the $10,000, and for no beneficial purpose that I can conceive of. We think it was in truth the real intent, though not the form or legal

operation of the receipt, that, unless some unforeseen event should make it necessary, judgment and execution should precede the re-delivery.

We do not care to cite authorities that where collateral articles are to be delivered on demand, as in this case, a demand is essential to the cause of action.   We will mention however the cases of *Scott* v. *Crane*, 1 Conn., 255, *Higgins* v. *Emmons*, 5 Conn., 78, and *Brown* v. *Cook*, 9 Johns., 361, which are actions on officers' receipts.

It has been claimed that this action will not lie, because the statute (Rev. Stat., tit. 14, § 58,) declares that " no suit except for debts due to the state or for the expenses of the last sickness or funeral charges, shall be brought against the executor or administrator of an insolvent estate so long as the same shall be pending in settlement." We do not find this objection in the defendant's notice.  But if we did, we think this statute relates to insolvent estates while in settlement and where the claim is of a nature to be presented to and allowed by the commissioners, which is not the case here.   This estate was in view of this statute fully settled, and it is stated in the notice to have been " fully settled in all respects according to law on the 10th day of January, 1857."

It is again said that there was an immediate duty in Mr. Thorp, on signing the receipt, to re-deliver the goods to the plaintiff, so that there was, at that time, a cause of action against him while in life, and against his estate during the time allowed for presenting claims ; and it is likened to the case of a note of hand payable on demand, in which case it is agreed a demand is not necessary in order to give a right of action against the maker.   But there is a marked difference between the two cases.   A note of hand on demand is a present debt, for which suit may be brought instantly, but it is not so with goods deliverable on demand.   Here a demand is indispensable, and until it is made the statute of limitations does not commence running.   The same objection is repeated in a more specious form.   It is said that there was an immediate conversion of these goods by Mr. Thorp's leaving them in the possession of the defendants in the

attachment; and likewise a breach of the covenant to re-
deliver on demand, by its becoming impossible for him to
comply with such request had it been made; and that these
two claims, one in trover and the other for damages for
breach of covenant, could have been and ought to have been
presented to the commissioners.   We see nothing to sustain
either of these positions.   Of course the goods were to remain
where they were when attached until called for by the mar-
shall, and therefore this negative fact constituted no conver-
sion.   Nor did this fact prove or constitute a breach of the
covenant, for it does not show any impossibility of perform-
ing the covenant, and is not incompatible with the exact
performance of it.   And the cases cited by the defendant's
counsel are none of them to the contrary.   In *Webster* v.
*Coffin*, (14 Mass., 196,) it is only decided, that where a re-
ceiptor of property had sent it beyond the jurisdiction of the
court, as where a vessel is sent to sea, so that a demand
would have been wholly useless, an officer having the exe-
cution to collect was excused from making a demand of the
property on the execution and a suit could be brought with-
out making it.   In *Johnson* v. *Spiller*, (Doug. Cas., 167,)
nothing was decided except that if a negotiable debenture
which is delivered to secure the repayment of a loan of
money is fraudulently sold and converted into money, the
money at once belongs to the debtor.   Perhaps too the
creditor is liable in trover for his tortious act in selling the de-
benture.   In *Hopkins* v. *Young*, (11 Mass., 302,) it is only de-
cided that a covenantor may be guilty of a breach of his
covenant by his rendering the performance of it impossible,
as a covenant that he will assign all the judgments and exe-
cutions which he shall obtain is broken by his voluntarily
putting it out of his power to make such assignment—a doc-
trine established in *Sir Anthony Main's case*, 5 Coke, 21, and
*Treat's case*, Cro. Eliz., 7.   See likewise *Griffith* v. *Goodhand*,
Sir T. Raym., 464, and *Charnley* v. *Winstanley*, 5 East, 266.
This whole doctrine is briefly but luminously stated in 2
Greenl. Ev., § 640, but no where is there to be found any
authority going to countenance the idea that upon the facts

Bacon v. Thorp.

in this case the plaintiff had a cause of action against Mr. Thorp either in trover or for breach of covenant; nor in fact does it appear from anything before us, that either Mr. Thorp or his executrix were unable to keep and perform his covenant, had a reasonable demand been made of them to re-deliver the goods.

It is further said that in *Booth* v. *Starr*, 5 Day, 275, our supreme court held, that the non-exhibition of a claim to commissioners, in just such a case as this, was a fatal objection to its recovery. We do not so understand that case. It is true that Judge Brainard, in giving the decision of a majority of the court, does express something to that effect, but obviously the court placed their decision on a distinct and different ground; for when the case came afterwards before the same judges in equity, (where the same statute governs as at law) the claim was readily and unanimously sustained, and nothing is suggested of any difficulty growing out of the non-exhibition of the claim within the time of limitation. That decision rested undoubtedly on the ground that a judgment against the administrator would avail nothing there, as he had fully settled his account and paid over and distributed all the property he ever held as administrator, (which was personal property,) under the order of the court of probate. The idea must have been, that the proceedings under the order of court virtually amounted to a plea of *plene administravit* at the common law, and would well sustain that plea could such an one have been put in in our courts; but as this would have been irregular, there was no way in which Booth could defend himself but by showing these facts on the trial. After this decision, a bill in equity was brought to obtain the property which had been, under the order, delivered over to the heir, on the principle that the heir was trustee of it for the creditor, and the bill was sustained; the court holding that there had been no neglect in not exhibiting a claim of such a character at an earlier day.

Another question of much practical importance in this class of cases is this,—what course should be taken to obtain payment. Is it necessary to resort to a bill in equity, or to

bring a suit at law against the executor or administrator, or shall the court of probate require the commissioners to meet again, or shall the judge appoint new commissioners. We are much inclined to say that in a case situated as this is, a large amount of personal property being in the hands of the executrix, or where there is real estate as in the case of *Griswold* v. *Bigelow*, the proper remedy is to sue the executor or administrator if he refuses to pay the debt; since, if there is a remedy at law, a bill in equity will not lie. We see not how further proceedings can be had before commissioners; at least our laws do not seem to be adapted to such a mode of relief; and certainly the judge of probate has no original jurisdiction to allow or reject claims; so that it seems most orderly and perhaps it would be necessary to sue the executor or administrator at law.

For these reasons we are of opinion that there is no error in the judgment below.

In this opinion the other judges concurred.

Judgment of superior court affirmed.