# THE SUPREME COURT

OF

# PENNSYLVANIA.

———◆———

LANCASTER DISTRICT, MAY TERM, 1829.

———◆———

[LANCASTER, JUNE 1, 1829.]

HARTMAN *against* DOWDEL, with notice to HAWK.

### IN ERROR.

An assignment by a husband of his wife's choses in action, as a *collateral security*, does not deprive her of the right of survivorship, in case he dies before they are reduced to possession.

On a writ of error to the District Court of *York* county, this appeared to be an amicable action for money had and received by *Michael Dowdel*, Esq., sheriff of the county, for the use of *John Hartman*, the plaintiff.

The following case (to be considered as a special verdict,) was stated for the opinion of the court below, on which judgment was rendered for the defendant.

### CASE.

"On the first day of *January*, 1816, *Rudolph Spangler* died, leaving among other children, *Margaret*, intermarried with *John Hawk*, and leaving real estate, which was sold by *William Johnson* and *Barnet Spangler*, administrators of the said *Rudolph Spangler*, deceased, (the heirs having refused to take the same at the valuation agreeably to the provisions of the act of assembly,) on gales; after which the said *John Hawk* and his said wife *Margaret*, executed to *John Hartman*, the plaintiff, the annexed power of attorney on the day of its date, and for the consideration therein mentioned. And on the 1st day of *January*, 1820, the said *John*

(Hartman *v.* Dowdel, with notice to Hawk.)

*Hawk,* deceased, and after his death, to wit, on the 31st day of *Ja-nuary,* 1823, there came to the hands of the said *William John-son* and *Barnet Spangler,* of the proceeds of the sale of the said real estate to be paid to the said *Margaret* or such other person as was entitled to receive the same in her right, (as her share in the hands of the said administrators,) the sum of ninety dollars, to re-cover which, a suit was brought in the Common Pleas of *York* county, by the said *Margaret Hawk* against the said *William Johnson* and *Barnet Spangler;* and on the 8th day of *August,* 1826, judgment was duly rendered in the said suit, for the plain-tiff, for one hundred and nine dollars, being the amount of principal and interest; on which judgment, the plaintiff issued a *Fieri Facias,* which was executed by the defendant as sheriff of the county of *York,* and on which he raised and has in his hands, to be paid to such per-son as may be entitled to receive the same, one hundred and four-teen dollars, which he refuses to pay over, the same being claimed by *Margaret Hawk* in her own right, and also by the said *John Hartman,* by virtue of the annexed power of attorney. If the said power of attorney be sufficient to entitle the said *John Hart-man* to the money in question, then judgment to be entered for the plaintiff for the said sum of one hundred and fourteen dollars, other-wise for the defendant."

The power of attorney referred to was as follows:

"Know all men by these presents, that we, *John Hawk* and *Margaret,* his wife, late *Margaret Spangler,* one of the heirs of *Rudolph Spangler,* deceased, have made, constituted, and appoint-ed, and, by these presents, do make, constitute, and appoint, and in our place and stead, do place and depute our trusty friend, *John Hartman,* of the borough of *York,* tailor, our true and lawful at-torney for us, and, in our names, *for his use,* to ask, demand, sue for and recover, and receive of and from *Barnet Spangler* and *William Johnson,* administrators of all and singular, the goods and chattels, lands and tenements, of the said *Rudolph Spangler,* de-ceased, all such sum and sums of money, legacies, debts and duties whatsoever, which now are due or hereafter to become due, out of and from the real and personal estate of the said deceased, until such time or times as he will be fully paid and satisfied, for the sum of se-ven hundred and forty-one dollars and eighty-one cents, for which sum he hath obligations, and the further sum of two hundred dollars which we are in due him, with lawful interest on the latter sum, if so much is or shall be coming to us out of the said deceased's estate, and to have, use, and take all lawful ways and means, in our name or otherwise, for the recovery thereof, by attachment, arrest, dis-tress, or otherwise, and to agree and compound for the same, and acquittances or other sufficient discharges for the same for us, and in our names to make, seal, and deliver, and to do all other lawful acts and things as fully in every respect as we ourselves could do if

(Hartman *v.* Dowdel, with notice to Hawk.)

personally present, and attorneys one or more under him, for the pur- poses aforesaid to make, and at his pleasure to revoke, ratifying, and allowing all and whatsoever our said attorney shall in our names do or cause to be done in and about the premises by virtue of these pre- sents, and as soon as our attorney shall have received his just claims, to account with us for the same and irrevocable until that time.''

*Durkee*, for the plaintiff in error, contended, that the power of attorney from *Hawk* and wife to the plaintiff, was an equitable as- signment to the latter, of the debt due to the wife, and a sufficient ap- propriation of it to make it his. Under these circumstances the death of the husband was no revocation of the power. 2 *Vern.* 559. 1 *Eq. Ca. Ab.* 45.

*Barnitz, contra,* answered, that although the power of attorney was certainly irrevocable during the life of the husband, yet after his death, his dominion over his wife's choses in action ceased, and the plaintiff standing in his place, is not entitled to recover. He cited *Prec. in Ch.* 125. 8 *Wheat.* 175, 201. *Co. Litt.* 52. *Wills.* 105, 565.

The opinion of the court was delivered by

Gibson, C. J.—A letter of attorney may be irrevocable, and con- tain an assignment of the thing, to be recovered, as undoubtedly was the case here. It is certain also, that any disposition of a wife's chose in action which is substantially an assignment for valuable consideration, will bar her right. The assignee, however, must be a purchaser, else he will stand in the place of the husband, and fail- ing to reduce the chose to possession in the lifetime of the husband, the wife's right will survive. In other words, the husband may sell his wife's chose in action, but cannot give it away freed from the incidents of the marriage. This distinction rests on the indis- putable authority of *Burnett* v. *Kinnaston,* (2 *Vern.* 401,) *Gar- forth* v. *Bradley,* (2 *Ves.* 675,) *Bates* v. *Dandy,* (2 *Atk.* 207,) and many other cases. In *Jewson* v. *Moulson,* (2 *Atk.* 417,) Lord Hardwicke says it is difficult to reconcile the cases on the subject of the wife's property in action, but that one thing is clear through- out, if the husband make a voluntary assignment of it, the assignee will stand in the place of the husband. And in *Packer* v. *Wynd- ham,* (*Prec. in Ch.* 412,) the reason is said to be because a chose in action is not assignable at law; and, without a valuable considera- tion paid, equity will not interpose against the conjugal rights of the wife. An equitable assignment is a declaration of trust, (*Co. Litt.* 232, *note* 1,) or rather an agreement that the assignee shall re- ceive the money to his own use, which equity will execute, or not ac- cording to circumstances, (*Pow. on Cont.* 191, 192,) but never in favour of a bare volunteer, except against the assignor or those claim- ing under him, (1 *Fonb.* 203,) and not consequently against a wife, who claims paramount. Hence, I apprehend, the difference between

(Hartman *v.* Dowdel, with notice to Hawk.)

an equitable assignment which requires payment of a consideration, and a release which is effectual at law without receipt of the money.

That an assignment in DISCHARGE of a debt is on valuable consideration, and that an assignment as a pledge or collateral security is not, was decided by this court in *Petrie* v. *Clarke*, (11 *Serg. & Rawle*, 377.) Now what consideration was there here? The assignment was clearly as a collateral security, the assignor remaining liable till the debt should be discharged by actual payment. No other terms were imposed than that the assignee should account for the surplus after satisfaction had. The assignment neither was a benefit to the assignor, nor a prejudice to the assignee. It rested on a moral obligation which binds to payment of debts, and which, though a good foundation for an express contract, would be insufficient to raise a promise by implication of law. The assignment, therefore, was on good consideration merely, which is insufficient to sustain it against any one but the representatives of the assignor.

                                                    Judgment affirmed.