## Tritt's Administrator *v.* Colwell's Administrator.

Prior to the Act of 11th April 1848, by marriage, the husband acquired a right to the wife's choses in action, provided he reduced them into possession during the coverture.

The husband's legal assignment of the wife's chose in action, or his equitable assignment of it, for value, was such a reduction of the title to it, into his possession, as barred the wife's right of survivorship.

A mere pledge of the chose was not sufficient; but an equitable assignment of it, as collateral security, for a present advance of money, though defeasible on the repayment of the loan, would defeat the right of the wife.

A separate use in the wife could only be created, by an instrument clearly expressing the donor's intention to bar the husband's marital rights.

The payment of a bond to the obligee under circumstances that ought to put a man of ordinary caution and prudence upon inquiry, which would enable him to ascertain the fact that it had been equitably assigned, will not defeat a recovery by the assignee.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of debt brought in the court below, by John E. B. Graham, administrator *de bonis non* with the will annexed, of John Colwell, deceased, for the use of William Graham, against George Miller, administrator of William K. Tritt, deceased, with notice to terre tenants; upon a bond, dated the 2d April 1838, in the penal sum of $1000, conditioned for the payment of $458.33¼ to the executors of John Colwell, deceased, for the use of Mrs. Jane Phillips, at the decease of Mrs. Martha Colwell, the widow.

On the 4th January 1831, John Colwell, by his last will and testament, devised one-third part of all his real estate to his wife for life; and directed a part of it to be sold by his executors, and the proceeds to be divided among his four daughters, of whom one was Jane Phillips, the wife of George M. Phillips.

The executors sold one of his tracts of land to William K. Tritt, and, by the terms of sale, one-third of the purchase-money was made payable, upon the decease of the widow, viz., to each of the daughters $458.33¼. For these sums, the purchaser gave bonds to the executors for the use of the daughters respectively; upon one of which the present action was brought.

[Tritt's Administrator *v.* Colwell's Administrator.]

These bonds were secured by a mortgage on the land sold; they were all dated the 2d April 1838; and, on the same day, the legatees received the bonds and executed a release to the executors. This release was executed by George M. Phillips, the husband of Jane; and the bond was endorsed by the executors— "For the use of George M. Phillips and Jane his wife."

On the 11th August 1841, George M. Phillips borrowed from William Graham $200, and executed to him the following assignment of the bond in question:—

"11th Aug't 1841, borrowed and received from William Graham, two hundred dollars, which I promise to pay, the one-half in three months, and the other half in six months, with interest from this date. And I hereby assign and transfer to the said William Graham, a bond which I hold on William K. Tritt for $458.33¼, payable on the death of Mrs. Martha Colwell; as a collateral security for the payment of the above sum of two hundred dollars. Witness my hand and seal the day and year first above written.

GEORGE M. PHILLIPS.

$200.00.

Test—JAS. H. DEVOR."

George M. Phillips died in May 1852, leaving his wife surviving; and Mrs. Martha Colwell, the widow of John Colwell, deceased, died on the 3d December 1856.

On the 12th March 1857, Samuel Myers, the owner of the land bound by the mortgage, and who was summoned as one of the terre tenants, paid this bond to Mrs. Jane Phillips. After payment of the money, Myers inquired where the bond was; Mrs. Phillips said she did not know; James Colwell, who was present, said he knew where it was, and agreed to keep Myers indemnified. Mrs. Phillips, at the same time, executed the following instrument:—

"I hereby acknowledge to have received of Samuel Myers four hundred and sixty-six dollars and thirty-five cents, in full of the one-fourth part of a mortgage of a tract of land in Southampton township, now owned by the said Samuel Myers and others, given to secure the payment of eighteen hundred and thirty-three dollars and thirty-three cents, one-fourth of which was payable to my use at the death of Mrs. Martha K. Colwell, widow of John Colwell; and hereby authorize and empower the recorder of deeds of Cumberland county to enter satisfaction for the one-fourth part of said mortgage, being my interest in the same. The said mortgage is recorded in the recorder's office of said county, mortgage-book F, vol. 1, page 49. Witness my hand and seal, the twelfth day of March, A. D. 1857.

JANE C. PHILLIPS." [L. S.]

[Tritt's Administrator *v.* Colwell's Administrator.]

Upon the trial, the defendant's counsel requested the court to charge the jury as follows :—

1. That the facts as proved in this case, do not exhibit such a disposition of the bond and mortgage by George M. Phillips, the husband, as did divest the right of survivorship of his wife, Mrs. Jane Phillips.

2. Unless Mr. Myers knew, at the time he paid the money to Mrs. Phillips, that the bond had been assigned previously, the payment to her was good and discharged the mortgage *pro tanto*.

3. That, in the absence of the bond, even if James Colwell did indemnify Mr. Myers for the payment to his sister, it is not such a notice, express or implied, as should vitiate his payment.

4. That there is no evidence in the case, which amounts to either express or implied notice to Mr. Myers, that the bond had been assigned. Nor is there any evidence of such notice to him, as would justify his withholding the money. There being a mortgage on record to secure the same money.

In answer to these points, the learned judge (GRAHAM, P. J.) instructed the jury as follows :—

" 1. In this case the husband had possession of the bond, he assigned it for value, and, so far as the money was paid by the assignee, the assignment defeats the wife's right as survivor, and the plaintiff would be entitled to recover. We, therefore, answer the first point presented by defendant's counsel in the negative.

" 2. But defendant contends, that Myers paid this bond to Mrs. Phillips, without notice of the assignment, and is, therefore, protected from a recovery in this suit brought for the use of the assignee. The law is, that if an obligor in a bond pays to the obligee without notice of an assignment, the assignee cannot recover ; but, if it is paid under circumstances which ought to put a man of ordinary caution and prudence upon inquiry, which would enable him to ascertain the truth, then such payment would not defeat a recovery by the assignee. If Mr. Myers did not know, at the time of payment, that the bond was assigned, and did not pay it under circumstances which ought to have put him upon inquiry, which would have resulted in a knowledge of the assignment, the payment to Mrs. Phillips was good, and satisfies the mortgage *pro tanto*.

" 3. The absence of the bond, and the indemnity of James Colwell to Mr. Myers, is not notice to Mr. Myers that the bond was assigned ; but is evidence, in connection with the other evidence in the case, for you to consider, in determining whether the payment was made under circumstances which ought to have induced inquiry, as we have before stated.

" 4. We cannot instruct you as requested by this point. The evidence is for you to pass upon, and we would not be justified in withdrawing it from the jury. There is evidence which we think

[Tritt's Administrator *v.* Colwell's Administrator.]

tends strongly to show that if Mr. Myers did not know the bond was assigned, he paid it under circumstances which ought to have put him upon inquiry which would have resulted in ascertaining the truth."

To this charge the defendants excepted; and a verdict and judgment having been given for the plaintiff, the defendants sued out this writ, and here assigned for error the charge of the court in answer to the 1st, 3d, and 4th points.

*Watts* and *Colwell*, for the plaintiffs in error.—Marriage is not a gift of the wife's choses in action to the husband, but merely bestows on him a naked power to make them his own: Dennison *v.* Nigh, 2 *Watts* 90; Shay *v.* Sessaman, 10 *Barr* 432; 2 *Kent's Com.* 137. An absolute assignment is an unequivocal act of dominion by the husband, with intent to make the subject-matter his own, and of course bars the wife's right of survivorship. But it is well settled, that reduction into possession, so as to work a change of ownership, is a question of intention: Gochenaur's Estate, 11 *Harris* 463. In the present case, the husband assigned merely as collateral security for a temporary loan.

An assignment as collateral security is to be considered merely as a pledge: 2 *Kent's Com.* 577; *Addison on Contracts* 318; Garlick *v.* James, 12 *Johns.* 146. The only distinction between this case and Hartman *v.* Dowdel, 1 *Rawle* 279, is, that, in the latter, the claim was assigned to secure the payment of a precedent debt, while here it is to secure a debt presently contracted; but the decision in that case rests wholly on the ground that the assignment was a mere pledge. And it is well established that a pledging does not change the title: Cortelyou *v.* Lansing, 2 *Caine's Cas.* 200; 2 *Kent's Com.* 581; *Addison on Contracts* 318; Latourette *v.* Williams, 1 *Barb.* 9; Webb's Appeal, 9 *Harris* 250.

The receiving of this bond by the husband, and executing the release to the executors, shows an evident intent that it should be for the wife's separate use: Siter's Case, 4 *Rawle* 468; Shay *v.* Sessaman, 10 *Barr* 433; 2 *Kent's Com.* 137, note *a*; 2 *Story's Eq.*, § 1204; Borst *v.* Spelman, 4 *Comst.* 284.

The money was paid by Myers to Mrs. Phillips, before he had any notice that a third party claimed it. The law does not impose upon an obligor the necessity of making inquiry to find whether his obligation has been changed; on the contrary, it casts upon the party who claims it, to give notice of the change: Bury *v.* Hartman, 4 *S. & R.* 177, 188; Woodbridge *v.* Perkins, 3 *Day* 364; Brindle *v.* McIlvaine, 9 *S. & R.* 74; Hodgson *v.* Naglee, 5 *W. & S.* 217; Northampton Bank *v.* Balliet, 8 *W. & S.* 311; 1 *Barr* 266; Gaullagher *v.* Caldwell, 10 *Harris* 302.

*Williamson* and *S. Hepburn*, for the defendant in error.—The

[Tritt's Administrator *v.* Colwell's Administrator.]

position of the plaintiffs in error is, that George M. Phillips did no more than pledge the bond.   A pledge is a deposit as security for a debt: *Story on Cont.*, § 717.  But here, there was an equitable alienation and transfer of the title and ownership.   A party taking and holding property, real or personal, defeasible on the performance of a subsequent condition, is, so long as the condition continues unperformed, deemed to have the same title and ownership, as if no such qualification had been annexed : 4 *Kent's Com.* 125 ; 2 *Preston on Abstracts* 185 ; Darling *v.* Chapman, 14 *Mass.* 103 ;. Barrow *v.* Paxton, 5 *Johns.* 258–61 ; Brown *v.* Bement, 8 *Johns.* 97 ; *Addison on Cont.* 318 ; 2 *Story's Eq.*, § 1030.   In Garlick *v.* James, 12 *Johns.* 146, there were no circumstances whatever indicating an intent to assign or transfer the note.

The case of Latourette *v.* Williams, cited by the plaintiffs in error, is against them ; it is there shown that though the pledging of a note does not pass the title, a sale or mortgage of it does. In Webb's Appeal, 9 *Harris* 250, it is merely said, that the wife's right of survivorship is not barred by an assignment without value, or by pledging it ; and to the same effect is Hartman *v.* Dowdel, 1 *Rawle* 279.   For this also there is the high authority of Lord HARDWICK, in Bates *v.* Dandy, 2 *Atk.* 207, a case which has the sanction of Chancellor KENT, in Schuyler *v.* Hoyle, 5 *Johns. Ch.* 207, and which is said by Chief Justice GIBSON, in Siter's Case, 4 *Rawle* 273, to be " one of the highest authority."

There is nothing to show that this bond was intended to be for the separate use of Mrs. Phillips.   A bequest to a trustee, in trust for the use of a married woman, does not exclude the husband's rights : Evans *v.* Knorr, 4 *Rawle* 66 ; Torbert *v.* Twining, 1 *Yeates* 432 ; Clevenstine's Appeal, 3 *Harris* 496.   Words used to create a separate exclusive interest in the wife, must manifest an unequivocal intent to exclude the power and marital rights of the husband : 2 *Story's Eq.*, § 1381–2 ; *Clancy* 262.   Where the husband and wife acquire a joint right or interest in personalty, the husband alone may dispose of it as he pleases : Paschall *v.* Thurston, 2 *Bro. P. C.* 10 ; McConnell *v.* Wenrich, 4 *Harris* 365.

The instruction of the court below on the subject of notice, is founded upon the soundest principles of law and equity, as well as of common and equal justice : Anderson *v.* Van Alen, 12 *Johns.* 343 ; Guthrie *v.* Bashline, 1 *Casey* 80–1.

The opinion of the court was delivered by

STRONG, J.—Prior to the Act of Assembly of April 11th 1848, marriage, though not an absolute gift of the wife's choses in action, vested in the husband a right to them, on condition that he should reduce them into possession during the coverture.   Her separate civil existence being suspended and merged in his, he succeeded necessarily to all her power and dominion over her chose, and

could exercise that power as fully as she could have exercised it, had she remained sole. *That* reduction into possession, which made the chose absolutely, as well as potentially, the husband's, was a reduction into possession not of the *thing*, but of the *title* to it. Consequently, his legal assignment of her chose in action, barred the wife's right of survivorship, for it took away her legal title, upon which alone that right rested. The only reason why an equitable assignment did not always work the same results, was, that the assignee was compelled to go into equity (a thing in action not being assignable at law), and when in equity, a chancellor would not interpose in favour of a volunteer against the conjugal rights of the wife. But when the assignee had an equity resulting from the payment of a valuable consideration, an equitable assignment was as available as a legal one—equally transferred the wife's title and equally barred her survivorship. The equitable assignment was a declaration of trust, and a valuable consideration paid, moved the chancellor to decree its execution. While, therefore, the husband's equitable assignment of a wife's chose in action, without value received, was unavailing to deprive her of the right of survivorship, an assignment for a valuable consideration did defeat it, and passed the title to the assignee, as fully as if it had been made by the wife before coverture.

It is unnecessary to pursue this subject further. The masterly discussion of Chief Justice GIBSON, in Siter's Case, 4 *Rawle* 468, has left almost nothing unsaid. If, then, the transaction between George M. Phillips and William Graham was an assignment of the bond of Mrs. Phillips for a valuable consideration, it must prevail against the wife, even though she survived her husband.

It is, however, contended that it was not an assignment, but a pledge. Undoubtedly, a pledge is insufficient to bar the wife's right, for it is no reduction into possession of her title. The instrument now before us is an assignment, not a pledge. It contains all the operative words fit and necessary to pass the title. It needs but one more witness, to make it a legal assignment under the Act of 28th of May 1715, such as to enable an assignee to sue in his own name. That it passed the bond to Graham, as a security collateral to the obligation expressed in the instrument, makes the transaction no less an assignment. The title was in the assignee, defeasible on the performance of a condition subsequent, to wit, the payment of the debt. That the existence of such a condition subsequent, does not prevent the title from vesting in the assignee, is the result of all the authorities, so far as I know, without exception. The case of Hartman *v.* Dowdel, 1 *Rawle* 279, relied upon by the plaintiff in error, in truth, asserts no other doctrine. Chief Justice GIBSON, the author of the opinion, in speaking of it in Siter's case, remarks that, " However the opinion of the court may have been expressed, it certainly was intended to rule the

case expressly on the distinction between a voluntary assignment and one for value." There the consideration for the equitable assignment was not, as here, an advance of money at the time, but a pre-existing debt, which had been held in Petrie *v.* Clark, 11 *S. & R.* 377, not to be a valuable consideration.

Bates *v.* Dandy, 2 *Atk.* 207, a case fully recognised in this state as of fundamental authority, was itself but an agreement to assign the wife's chose in action, as a collateral security for a present loan of money, yet it was decreed to prevail against the wife. A mortgage is only a collateral security, yet it passes the title. This is universally conceded: 2 *Kent Com.* 581; *Addison on Contracts* 318; *Story's Eq.* 1030. If, then, the assignment of George M. Phillips conveyed to Graham the title to the chose, as we have seen that it did, and was for a valuable consideration, the court below correctly instructed the jury that it defeated Mrs. Phillips's right of survivorship. As was said in Woelper's Appeal, 2 *Barr* 71, it is the husband's assumption of title, and not the form of the act by which it is indicated, which is the criterion. An actual use of the wife's chose in action for his own purposes, works a transfer of her ownership.

The second error assigned is, that the court refused to charge the jury, "that the facts, as proved, established, that the transaction between the executors of John Colwell, in taking the bond in the name of the wife and the release of the husband, was an appropriation by him of the fund to the separate use of the wife, and took from the husband the right to dispose of it either absolutely or conditionally." Conceding now, that it was a question for the court, and not for the jury, what were the facts proved? There was no direct evidence that Phillips consented that the bond should be taken in the name of the executors for the use of the wife, and when he received it, it was endorsed for his use as well as for that of Mrs. Phillips. He merely united with her in a release to the executors. To hold that these acts constituted an appropriation to the sole and separate use of the wife, would be giving to them an effect far beyond what equity has ever allowed. While no particular language is indispensable, yet the claim of the wife to a separate use being against common right, the instrument under which it is made must clearly speak the donor's intention to bar the husband's marital rights, or it cannot be allowed: *Clancy* 262.

The only remaining error assigned is, to the charge of the court, relative to the knowledge of the defendant that the bond had been assigned when he paid it to Mrs. Phillips the *cestui que use*. The evidence showed, that at the time when payment was made, he asked where the bond was, and was told by Mrs. Phillips that she did not know, and that he received indemnity and took a receipt. The court instructed the jury, that "if it was paid under circumstances which ought to have put a man, of ordinary caution and

[Tritt's Administrator v. Colwell's Administrator.]

prudence, upon inquiry which would enable him to ascertain the truth, then such payment would not defeat a recovery by the assignee." Why was not this proper instruction? Payment to an equitable assignee is certainly a good payment. And after notice that there is such a holder, payment to the legal holder is unavailing to discharge the debt. This is conceded. But why is this so? Because it is inequitable that a debtor should pay to one who, in equity, is not entitled to receive, when he knows that such payment is injurious to another. In equity, the assignment has the same force as if it had been legally made. The reason why a debtor is discharged by payment to the assignor, without notice of such assignment, is, that he has been guilty of no wanton or heedless disregard of the rights of another. But when he has reason to believe that another has become the owner of the chose, and, uninfluenced by that belief, makes payment to the original creditor, he cannot aver that he has been guiltless. In accordance with this view, it was said by THOMPSON, C. J., in Anderson v. Van Alen, 12 *Johns.* 343, "It is a well settled principle, that courts of law will notice the assignment of a chose in action, and protect the interest of a *cestui que trust*, against any person who has notice of the trust; and it seems also to be pretty well settled, that actual notice is not necessary. If a person acts in the face of facts and circumstances which were sufficient to put him upon inquiry, he acts contrary to good faith and at his peril." This is also the doctrine of Johnson v. Bloodgood, 1 *Johns. Ca.* 51; and our own court, in Guthrie v. Bashline, 1 *Casey* 81, ruled that it was not necessary that direct notice of the assignment of a judgment be given by the assignee or his agent. It is sufficient if the information be given under circumstances and in terms to arrest the attention of the debtor.

The charge of the court below was, therefore, unexceptionable, and the judgment must be affirmed.

Judgment affirmed.