SPONGE DIVERS' ASS'N, Inc., v. SMITH, KLINE & FRENCH CO.

(District Court, E. D. Pennsylvania.   March 12, 1919.)

No. 4260.

1. SALES ⬤⟲168(2)—DELIVERY AND ACCEPTANCE—TIME FOR INSPECTION.

A purchaser of goods with right of inspection *held* to have a reasonable time after their receipt within which to inspect and exercise his option to reject the goods.

2. SALES ⬤⟲182(4)—TIME FOR INSPECTION—QUESTION FOR JURY.

Whether a purchaser of goods exercised his right to reject the goods after inspection within a reasonable time after delivery *held* a question for the jury.

3. ASSIGNMENTS ⬤⟲101, 138—ACTION AGAINST DEBTOR—QUESTION FOR JURY.

In an action by a seller to recover the price of goods sold for the benefit of a use plaintiff to which the account had been assigned with a bill of sale of the goods, where the goods had been returned to the legal plaintiff, actual notice of the transfer to use plaintiff *held* necessary to bind the purchaser, and whether such notice was received was a question for the jury.

At Law.   Action by the Sponge Divers' Association, Incorporated, to the use of the Commercial Credit Company, against the Smith, Kline & French Company.   On motion by plaintiff for new trial.   Denied.

Julius C. Levi, of Philadelphia, Pa., for plaintiff.

James Collins Jones, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.   The rule for a new trial was taken by the plaintiff.   The verdict was for the defendant.   Ordinarily, in view of the conclusions we have reached, the case would be disposed of by an order discharging the rule and entering judgment on the verdict.   The very capable counsel engaged in the cause have, however, deemed the questions involved of sufficient interest and importance to call for a searching discussion, and have discussed them with fullness and clearness.   This more than justifies, it invites, a like fullness, and, so far as we can approach it, a like clarity in stating the conclusions reached and the reasons therefor.

There is in the case a legal plaintiff and a use plaintiff.   There is no merit in the case of the legal plaintiff, or, accurately stated, the defense to the claim of that plaintiff is complete.

The case is one of a claim for goods sold and delivered.   The defense is that the goods were bought subject to inspection, and upon inspection were rejected and returned to the legal plaintiff who retained them.   The real plaintiff is the Commercial Credit Company, to whose use the action is brought.   This company, as its name indicates, is one of those institutions which supply credit to manufacturing companies, such as the legal plaintiff, by financing them.   This is done upon the system of buying the accounts of the manufacturers and giving notice of the ownership, thus putting upon the debtor the obligation to pay the credit company.   The credit company further protects itself by having the manufacturer warrant the account to

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be collectible, and by advancing, not the full face value of the account, but a part of it. When the transaction goes through without a hitch, it results in the credit company receiving back the moneys advanced, with interest to date of reimbursement, together with a charge for the service.

The transfer of the account in suit was evidenced by a formal assignment, which also operated as a bill of sale of the goods to which the account referred. Notice of the transaction was given the consignee of the goods by a statement of account accompanying the bill of lading, which statement had stamped upon it plain notice that the ownership of the account and also the title to the goods shipped were in the credit company. There had also been previous dealings of a like kind in which the right of the credit company to receive payment had been recognized and acted upon by the defendant.

A further fact disclosed was that the defendant had retained a relatively small part of the shipment. This they paid for under a stipulation that it was paid and accepted without prejudice.

Another fact in the case was that the goods had been forwarded in two shipments under dates which we will call May 18th and June 4th. These dates may not be accurate, but they will answer to present the point upon which their significance turns. The goods were not inspected until some time in June when the legal plaintiff was notified of the rejection, and after some correspondence the goods were shipped back about the middle of July.

This does not complete the statement of the pertinent facts, but it affords the opportunity to contrast the opposing theories of the parties, and the remaining facts may be best stated in connection therewith.

1. The theory of its case, in one of its aspects, as presented by the plaintiff, was that the defendant having retained a portion of the goods shipped had lost its right of rejection, as it was bound to reject all or accept all.

The opposing theory of the defendant was that the purchase was of sponges, and what has been called the "sponge etiquette" of the case demanded that the defendant retain and pay for the part of the sponges which they kept. This was in deference to a custom or rule of the trade in accordance with which the parties dealt in this instance as they had before. Sponges were known by quality as "pure" and "regular," and were so ordered; the buyer having the right to inspect and reject if the shipment was not up to what was known in the trade by these names. There was difficulty, however, in repacking sponges removed from the case for inspection without damage. In consequence, the requirement was that the consignee pay for the sponges thus inspected whether they were of the contract quality or not. These were the sponges which the defendant kept and for which it paid.

This question of how the goods which were kept came to be kept and the good faith of the defendant in exercising its right to reject was left to the jury, and we still think properly so. It is evident the trial judge did not have in mind that this feature of the case was in controversy. It seems now that the defendant wrote one or more let-

ters which on their face justify the comment of counsel for plaintiff that a grave question of the good faith of the rejection arose. This feature of the charge was a regrettable oversight, but as an appellate question it does not arise either formally or in substance. Not formally, because if the trial judge overlooked the significance of any letters written by the defendant attention should have been called to them. Not in substance, because there is a moral certainty the cause was decided upon an entirely different issue.

[1, 2] 2. The theory of the defense upon another feature of the trial was this: The shipment was, as before stated, returned to the legal plaintiff. When the fact was brought to the attention of the defendant that the shipment should have been returned to the use plaintiff, an effort was made to have the shipment sent back to the defendant. The legal plaintiff took this situation to the use plaintiff. Defendant very strenuously contended that the use plaintiff asserted the control which it had over the legal plaintiff to have the latter refuse to give up the goods. With such a fact finding made, the defendant invoked the doctrine that, as the rights asserted by the plaintiff were equitable rights, it was bound to do equity, and its conduct in this respect was so inequitable as to work a forfeiture of all its claimed rights. The doctrine invoked was the familiar "clean hands" doctrine. The trial judge refused, not, of course, to accept the principle, but to apply it. This was because there was no evidence on which to submit the fact finding. What the use plaintiff, however, did do was to send through its Philadelphia counsel the letter of August 21st. This meant, if it meant anything, that the right of the defendant to reject the goods was denied and acceptance of their return refused. The claim of the use plaintiff was based, not upon the fact that the return had been to the wrong person, but upon the proposition that the defendant had lost its right to reject by not making the rejection promptly. This made the decision of the cause to turn upon the sole issue of the right to reject. The jury were instructed that, if their minds led them to the conclusion that this was the determining issue, they might so decide the cause. In thus deciding it they were further instructed that the defendant had a reasonable time in which to assert its right to reject, and the jury were to find whether the right was exercised within a reasonable time. Both the plantiff and the defendant complain of this instruction. The verdict has removed all practical value from the complaint of the defendant.

The complaint of the plaintiff is: First, that the defendant did not have a reasonable time in which to inspect and reject, but must do so at once; and, second, that, even if it had such reasonable time, the question of reasonable time was not for the jury, but the court, and the court should have held the time to be unreasonable.

We are still of opinion that the defendant had a reasonable time in which to inspect and accept or reject, and that the question of what was a reasonable time was a jury question.

This is the practically important, and, in a sense, the real appellate, question now involved. because there is no doubt that the verdict turned upon this feature of the case.

[3] 3. The theory of the plaintiff upon a third feature of the case was that, admitting the duty of the use plaintiff to give notice of its rights to the defendant, this notice need not be actual notice, but that constructive notice would be sufficient, and that the notice given was such as to be the notice required by law.

In support of this proposition the following, among other authorities, are cited: 5 Corpus Juris, 978; Tritt's Adm'r v. Colwell's Adm'r, 31 Pa. 228; 29 Cyc. 1113.

The pertinence of this proposition will appear from this circumstance. The trial judge refused to charge, as requested by plaintiff, that the defendant had notice of all of the rights of the use plaintiff. As the rights of the use plaintiff were equitable rights dependent upon the fact of notice, the jury were charged that this notice must be actual notice, and the fact of notice was in consequence submitted to them to be found. This was accompanied with such comments that there can be no doubt of the finding upon this question, and that the point is without value as affecting the result of the trial. Nevertheless, if error, although probably innocuous error, there can be no certainty of this, and it would be reversible error. We adhere to the view before expressed that the fact, no matter how strong the evidence in support of it (and its strength was impressed upon the jury), was none the less a fact to be found by the jury.

A new trial is accordingly refused.

As the reasons for a new trial follow the points of charge, we submit with and as part of this opinion a discussion of each point.