## TUTTLE AND WIFE vs. FOWLER.

A promissory note not negotiable, given to a *feme sole*, who afterward marries, may be assigned for a valuable consideration during the coverture, by the husband alone, so as to defeat the wife's right of survivorship therein. Where the assignee of such note brought an action on the same, during the coverture, in the joint names of the husband and wife, against the maker, who had knowledge of its assignment; and before judgment was obtained in such action, the husband procured a divorce from his wife; it was held, that the wife had no power to discharge such note after the divorce, although, at the time he made the assignment, the husband contemplated obtaining a divorce : held also, that, although the wife, after being divorced from her husband, gave the defendant a discharge from the payment of such note, the action so commenced might, under our statute relating to "suits on choses in action assigned," be prosecuted to final judgment, in the joint names of the husband and wife, after they had been divorced.

THIS was an action of assumpsit, brought in the names of Enos T. Tuttle and Elizabeth D., his wife, to recover the amount of a promissory note not negotiable, given to the said Elizabeth D., on the 1st day of January, 1848, while she was sole and unmarried.

The defendant pleaded the general issue, with notice, that, under such issue, he would offer to prove, that, at the January term of the superior court in 1850, the said Elizabeth D. was lawfully divorced from the said Enos T., and that, since the granting of such divorce, and while sole and unmarried, by a full and sufficient discharge and release, under her hand and seal, she had released and discharged unto the defendant, for a valuable consideration, the note, and all other causes of action, for which the plaintiffs claimed to recover in this suit ; and that, the plaintiff, Enos T. Tuttle, was prosecuting said suit, without the consent of said Elizabeth, and against her mind and will.

The cause was tried at New Haven, October term, 1850.

On the trial, it was admitted, that the note described in the declaration had been executed, by the defendant, to

Elizabeth D. Tuttle, one of the plaintiffs, before her marriage with Enos T. Tuttle, the other plaintiff; that down to the time of the marriage in September, 1849, said note remained her absolute property; and that the plaintiffs, upon the petition of said Enos, were divorced by the superior court, at its January term, 1850.

The defendant then introduced evidence tending to prove, and claimed that he had proved, that, after the plaintiffs had been divorced, the said Elizabeth, by an instrument sufficient for that purpose, under her hand and seal, released and discharged the defendant from the payment of the note in suit.

The plaintiffs introduced evidence tending to prove, and claimed that they had proved, that before said divorce was granted, and before this suit was commenced, the said Enos had assigned said note, for a full and valuable consideration, to Zerah P. Tuttle, with due notice to the defendant, of said assignment; that the defendant had taken said release, with full knowledge of said prior assignment, and that this suit was brought and prosecuted for the sole benefit of said assignee.

The defendant then introduced evidence tending to prove, and claimed that he had proved, that, before said assignment was made, the said Enos had determined to obtain said divorce; and at the same time had resolved to reduce to his possession the note aforesaid ; that he had taken steps to accomplish both these purposes ; that payment had been demanded by him, of the person claimed by him to be the defendant's agent, and such payment had been refused ; that said Zerah P. Tuttle, knowing all the facts aforesaid, and knowing that the petition for divorce either had been brought, or was immediately to be brought, purchased and sued said note, in contemplation of the divorce.

And the defendant claimed, and asked the court to charge the jury, that if they should find said release to have been

executed by said Elizabeth to the defendant, as claimed by the defendant, and should also find said assignment, with due notice to the defendant, as claimed by the plaintiffs—then,

1. If the assignment was in fact a sale and not a sham—yet if the assignee purchased the note, as claimed by the defendant, in contemplation of the divorce, and with the expectation of reducing the chose to his possession, after the termination of the coverture, and not before, he had no equitable title to relief against the legal effect of the release, and hence the plaintiffs can not recover.

2. Even if the assignment was made in good faith, for a valuable consideration, and not in contemplation of the divorce, it could not defeat the wife's survivorship.

3. And the defendant further claimed, and requested the court to charge the jury, that, even if they should find no release to have been executed as aforesaid, by said Elizabeth, and even if the wife's survivorship was defeated by said assignment, still, upon the facts admitted by the plaintiffs, as aforesaid, a recovery could be had in this action, by these plaintiffs, the wife having now the sole and absolute legal title to the note.

The court did not charge the jury in accordance with either of the defendant's said claims, but charged them, that, if said assignment was not a sham, but was, in fact and in truth, a sale of said note, for a full and valuable consideration to said assignee, and if, before the execution of said release, the defendant had full knowledge that said assignment had been made, then the assignment would be a good defence against said release;—that it was of no consequence, if the motives of the parties to said assignment, in the making of it, were as claimed by the defendant, provided it was in fact and in truth no sham, but a sale for a valuable consideration, as aforesaid; and that, even if said assignee did purchase

Tuttle *v.* Fowler.

the note in contemplation of the divorce, nevertheless said assignment would be a good defence against said release, and the plaintiffs must recover in this suit.

As to the third objection aforesaid, the jury were instructed, that the action could be maintained, notwithstanding the divorce, by Zerah P. Tuttle,. the assignee, by virtue of the statute law, if they found he was a real *bona fide* purchaser, and had given notice to the defendant, before the said release, as he claimed to have proved.

The jury having found a verdict for the plaintiffs, the defendant thereupon moved for a new trial, for a misdirection.

*Peck & Harrison*, in support of the motion, contended, 1. That the husband can defeat the wife's ownership in her choses in action, which she had before marriage, only by reducing the same to possession during the coverture. A divorce has the same effect upon his interests therein, as his death. An assignment by him, of her choses in action, even for a valuable consideration, does not defeat her survivorship therein.

These doctrines, notwithstanding some old *dicta* to the contrary, are fully recognized in England. Clancy on Husband and Wife, 109, 111. 2 Bl. Com., 434. Newland on Con., 136. And in Massachusetts. 1 Met. R., 476. 19 Pick. R., 269. 6 Met. R., 545. They accord also with the spirit of our own decisions, and with the policy of our laws. *Starr* v. *Pease* et al., 8 Conn. R., 541. *Wheeler* v. *Hotchkiss*, 10 Conn. R., 229. Rev. Stat., 458 and 273, 274. Stat. of 1849, 16. Stat. of 1850, 27.

2. The release of the wife is not, in this case, rendered inoperative, by the assignment.

The claim of the defendant is addressed only to the equity side of the court ; and as he brought the note, and sued it, as an intermeddler between husband and wife, he can re-

ceive no help from a court of equity. 3 Bac. Abr., tit. Maintenance.

3. One of the plaintiffs on the record has now no legal title or interest in the note, upon which the action is brought. This fact is a distinct and conclusive defence to the suit. *Lee* v. *Jilson* et al., 9 Conn. R., 94. *Northam* et al. v. *Kellogg*, 14 Conn. R., 569. 11 Mass. R., 313. 3 Met. R., 338. *Chantler* v. *Lindsey*, 16 Mee. & W. R., 82.

*C. Ives*, contra, contended, 1. That the exercise of any act of ownership by the husband, during coverture, over such chose in action as the wife had at the time of the marriage, which indicates a design on his part to reduce it to possession, takes away her right of survivorship therein. A *bona fide* sale by him, during coverture, for a valuable consideration, is such an act. 1 Sw. Dig., 25. Reeve's Dom. Rel., 4, and authorities there cited. 2 Kent's Com., (6th ed.,) 136, 137. *Schuyler* v. *Hall*, 5 Johns. Ch. R., 196. *Lowry* v. *Houston*, 3 Howard, Miss. R., 394. 1 Roper on Husband and Wife, 220, 221.

2. This is an unconditional right of the husband, and if consummated by a sale, the law will not inquire into the motives of buyer or seller. The decisions in other jurisdictions, which are regarded as questioning this, relate to the wife's prospective interests, and are in cases not analogous to this. But even in cases of that description, decisions may be found on both sides of the question. Reeve's Dom. Rel., 5, and authorities there cited. 4 Rawle's R., 468.

3. This suit having been properly brought, and the note upon which the suit is founded, purchased, for a valuable consideration, and due notice thereof given, the statute law of this state will not allow any act of the seller to defeat it. Rev. Stat., 76. The release relied upon, in this case, was moreover a fraud upon the purchaser, and will be so regarded, by a court of law. *Porter* v. *Seeley*, 13 Conn. R., 564.

*Van Buskirk* v. *Hartford Fire Ins. Co.*, 14 Conn. R., 141.
*Blin* v. *Pearce*, 20 Vt. R., 25. *Learing* v. *Learing*, 9 Paige
Ch. R., 284.

HINMAN, J. This was an action in the names of husband and wife, plaintiffs, on a note given to the wife before marriage. It was originally brought, and is still prosecuted, by the assignee of the husband. Since it was brought, the plaintiffs have been divorced; but the previous assignment was made in good faith, and for a valuable consideration. It also appears, that, since the divorce, the wife has discharged the note.

There is no doubt, that a divorce is tantamount, in its effect upon the wife's property, to a dissolution of the marriage, by the death of the husband. *Starr* v. *Pease*, 8 Conn. R. 541. 10 Conn. R., 225. Hence the question arises, whether a *bona fide* assignment of the note in suit, for a valuable consideration, made by the husband, during the marriage, is such a reduction of it to his possession, as will operate to defeat the wife's right of survivorship. The marriage did not vest the title to the note in the husband. "In regard to her rights in action," says Lord Coke, "as debts by obligation, contract or otherwise, the husband shall not have them, unless he and his wife recover them—and this has always been the law." What, then, will amount to a recovery of the wife's chose in action; or, in other words, what is such a reduction of it to the possession of the husband, as will deprive the wife of her right of survivorship? This has never been judicially settled in this state. Judge Swift, however, says, in his Digest, 25, that a specific assignment of a particular chose in action, for a valuable consideration, will prevail against the wife's right; but a general or voluntary assignment, if the assignor has not reduced it to his possession, will not bar her right, if she survive; and he cites Newland on Con., 136, in support of the

doctrine. It is true, some modern English cases do not support this proposition; still, we think it not only reasonable in itself, but it may fairly be said to result from an established principle of long standing, and is also supported by the older authorities.

In 2 Atk., 208, it was held, that the husband might release the wife's bond; and that it made no difference whether he had received the money on it, or not. And so in *Chamberlain* v. *Hewson*, Salk., 115, it was held, that he might release costs adjudged to her, in a prosecution she had carried on in the spiritual court; and in *Gray* v. *Acton*, Salk., 326, C. J. Holt said, that "Where a wife has any right or duty, which by possibility may accrue during coverture, the husband may release it." Authorities to this effect are very numerous, and are collected in Clancy, 110, 1 Roper, 227, and 2 Kent's Com., 134.

Now, while it is admitted, that the husband has power to release the wife's debt, it is still insisted, that he can not assign it, so as to defeat her right to it, if she survive him; and the reason given for this is, because he can convey no greater right to his assignee, than he had himself. But this reason is as applicable to a release, as to an assignment. We can see no more impropriety in allowing him to convey a greater right than he possesses, than there is in allowing him to discharge an obligation which does not belong to him : a reason which is so extensive in its operation ought not, we think, to be relied upon. But the older authorities support the proposition of Judge Swift; and Chancellor Kent says, "It is understood to be the rule best sustained by authority." 2 Kent's Com., 137. In *Bates* v. *Dandy*, 2 Atk., 207, it was held, that the husband's agreement to assign the wife's mortgages, where a valuable consideration had been given, was valid, and could be enforced in equity, to the extent of the consideration, against the claim of the wife, as survivor, as well as against the representatives of

Tuttle *v.* Fowler.

the husband ; and the case was put upon the ground of the husband's power to make the assignment for his own benefit. See, also, *Carteret* v. *Paschal,* 3 P. Wms., 197. We are aware, that the cases of *Purdew* v. *Jackson,* 1 Russ. R., 70, *Honner* v. *Morton,* 3 Russ. R., 65, and some others, go upon the ground, that a husband can convey no greater right than he has himself; but we can not yield to their authority, or to the reasoning on which they are founded; and while we do not adopt all the views of C. J. Gibson, in *Siter and another* v. *Guardian of Jordan,* 4 Rawle, 468, we still think, that as applicable to this case, the result of his reasoning is the more correct. We do not say, as seems to be the opinion of Gibson, C. J., that a mere intention of the husband, to reduce a chose in action to possession, is sufficient to bar the wife's right. Such a principle, leaving the point to depend upon the mere volition of the husband, would be found to be too difficult for practical application. If this is true, anywhere, we think its application should be limited to such choses in action, as accrue to the wife, during coverture ; and, as with us, these, for the most part, vest absolutely in the husband, the rule would have very little application here. Besides, we think it is not the true rule, (see *Scarpellini* v. *Atchinson,* 53 E. C. L., 864,) and has, obviously, no application to the case under consideration. In regard to cases of this sort, we have no doubt, the husband must have made the debt available for his own use, in order to deprive the wife of her right of survivorship. But we can not see, why a reduction to possession is not as effectually accomplished, by a *bona fide* sale and assignment, for value, as it would be by collecting the money of the debtor. In both instances, the husband has obtained all that the debt was capable of producing. On his receiving value for his assignment of the wife's debt, he has, so far as he is concerned, reduced it to his possession, and his dying, or divorce, ought

not to deprive the assignee of the fruits of his purchase. It seems to us, to be a mere question of power in the husband, as the only agent, having authority to control and dispose of the property, after the marriage ; and this is not limited, or, in any sense, founded upon his interest in it. Before the marriage, the power to assign was unlimited in the wife. By the marriage, her power is taken away, and transferred to the husband ; and, if his assignment is made in good faith, and for value, we see no reason, in annexing to it a condition, rendering. the transaction inoperative, on a dissolution of the marriage.

But it is said, the release of the wife, since the divorce, operates to prevent the assignee from a further prosecution of the suit. Had it not been for our statute of 1822, this would be so. But that statute provides, that a discharge of a chose in action shall have no other effect, as against an assignee, than it would or ought to have in a court of equity. The release, in this case, was given after the defendant had full knowledge of the claim of the assignee, and so was received in. fraud of his rights. Such a discharge would be wholly unavailing in a court of equity, and is, therefore, unavailing here, by the express provision of this statute. Reivsed Statutes, 76. *Scripture* v. *Newcomb*, 16 Conn. R., 588.

Again, it is claimed, that the charge that the motives of the parties to the assignment were of no consequence, provided the sale and assignment was a *bona fide* transaction, and for a valuable consideration, was erroneous. We do not think so. The circumstance relied upon·by the defendant, in this part of the case, was, that the assignment was made in contemplation of the divorce. We do not think this circumstance deprived the husband of his power to assign, or the assignee of his right to purchase. The husband intended to reduce the note or the avails of it, to his possession. This he had the right to do ; and whether he, at the time, contemplated a divorce or not, is of no importance.

The divorce, which has been granted since the commence ment of the suit, raises the question, whether the assignee can any longer prosecute it, in the joint names of the plaintiffs. To sue or to maintain a suit, the party plaintiff must have the legal interest in the subject matter. *Lee* v. *Johnson*, 9 C., 94. And, had the divorce been granted at the time, no doubt the suit must have been brought in the name of the wife, as she alone would have had the legal interest in the note. But is it error to permit the assignee to take judgment in the names of the plaintiffs, since the divorce? If the husband had died, his death might have been suggested on the record, and the action would have proceeded, as if brought in the name of the wife alone, after such death. Stat., 72, § 81. An equitable construction of the statute, authorizing this to be done in the case of the death of a co-plaintiff or defendant, would have justified the holder of this note, in taking the course of suggesting the divorce, or causing it to be suggested on the record, and the action might then have proceeded in the name of the wife alone. But it is too late now to take that course. *Northam* v. *Kel logg*, 15 C., 569.

We think, however, the statute relating to the rights of assignees of choses in action, which we have before alluded to, p. 76, fairly applies to this part of the case also. That statute is very broad and comprehensive in its terms. It provides, that "Whenever the defendant in any suit on a bond, note or other chose in action not negotiable, shall plead or give in evidence the discharge, admission or other act of the plaintiff, or any payment made to him, or any transaction whatever between the plaintiff and defendant, it shall be lawful for the plaintiff to reply or prove, &c. And on the same being made to appear, such discharge, admission, payment or other transaction, shall be no otherwise available in such suit, than the same would or ought to be in a court of equity." Now the act of procuring the divorce between

these plaintiffs was "the act of the plaintiff," and so within the letter of this statute. Then what would be the effect of such an act, in a court of equity? Obviously, the rights of an assignee would be protected against it. The death of a party is no ground of abatement in equity, where the interest survives to a surviving party; and where a husband dies, under circumstances which admit of demand by or against his representatives, the proceedings do not abate. Sto. Eq. Pl. 290, § 357.

The statute to which we have referred, was passed to prevent the vexation, delay and injustice which were so liable to occur, in cases of this sort, in consequence of the unbending rules of law. And on a mere question of practice, where a party has established his right, we think it no strained construction, to hold the case of this assignee, to be within the mischief which the statute was intended to remedy. We do not, therefore, advise a new trial.

In this opinion CHURCH, C. J., and STORRS, J., concurred. ELLSWORTH, J., having tried the cause in the court below, was disqualified.

WAITE, J. The present action is brought, to recover the amount of a promissory note, not negotiable, given by the defendant to Mrs. Tuttle, one of the plaintiffs, prior to her marriage with the other plaintiff. They have since been divorced, and subsequently, she has released and discharged the defendant from the payment of the note.

The question now is, whether the present action can be sustained, in the names of these two plaintiffs, upon that note, after the divorce and after the discharge given by the payee of the note. It is claimed, that it may be, for the benefit of Zerah P. Tuttle, to whom the husband alone, during the continuance of the coverture, assigned the note, for valuable consideration.

By a series of decisions, it has now become well settled,

that the termination of the coverture, by a divorce, has the same effect upon the husband's interest in his wife's property, as his death. *Starr* v. *Pease,* 8 Conn. R., 541. *Wheeler* v. *Hotchkiss,* 10 Conn. R., 225. *Legg* v. *Legg,* 8 Mass. R., 101. *Barber* v. *Root,* 10 Mass. R., 260.

The note, at the time of the marriage, was a chose in action, belonging to the wife. It did not, upon the marriage, become the absolute property of the husband. He acquired but an inchoate right to it. It would become his, only upon condition, that he reduced it into possession, during the existence of the marriage relation. This he failed to do ; and, unless the rights of the parties are changed by the assignment of the husband, the note survived to the wife, became absolutely and unconditionally her property, and entirely subject to her control. She alone can sustain a suit upon it, or, at her election, discharge the debt. The authorities upon this subject are numerous and decisive. Co. Litt., 351, b. Clancy on Husband and Wife, 4. *Hayward* v. *Hayward,* 20 Pick. 525.

What effect had the assignment, made by the husband alone, upon the rights of the parties ; or in other words, what interest did the purchaser thereby take ? In my judgment, he took precisely the same interest the husband then had, and no more. The husband had the right to collect the note, and apply the avails to his own use, provided he could do it, during the continuance of the coverture, and nothing more. This right, by the assignment, was conveyed to the assignee, and that was all. They both have failed to do this, and consequently, the rights of the wife remain unimpaired by the assignment.

Even a judgment obtained upon the note, would not operate as a reduction into possession, if the husband failed to collect the debt, during the continuance of the coverture. Under such circumstances, the judgment would survive to the wife.

It is, however, said, that the assignment was equivalent to a reduction into possession, and operated to transfer the note absolutely to the assignee. But I am entirely unable to understand, upon what principle such a result can be produced. The husband had but a conditional interest in the note—the right to collect it, provided he could do it, before the marriage relation was dissolved. How then could he, by a conveyance of the note, as his own property, and by his own act alone, convey an absolute and unconditional interest?

Surely, this can not be said of any other conveyance made by the husband, of his wife's property. Were he to give an absolute deed of her land, it would convey nothing more than his interest. If there were no issue of the marriage, the interest of the purchaser would unquestionably terminate, upon the termination of the marriage relation. *Law* v. *Hempstead,* 10 Conn. R., 27. *Rogers* v. *Moore,* 11 Conn. R., 557.

There are indeed cases, where a person may convey a greater interest in property than he possesses, as where he acts under authority given him by the owner to sell. But I am not aware, that the claim of the assignee has ever been placed upon any authority, given by the wife, to convey.

A very extraordinary argument has sometimes been resorted to, in support of the claim. It has been said, that equity considers the assignment as amounting to an agreement, that the husband will reduce the property into possession ; that, what a party has agreed to do, shall be considered as done ; and that, as the husband had the power of reducing the property into possession, his assignment shall be regarded as having that effect. 2 Sto. Eq., § 1412, note 3.

There may be some ingenuity in the argument, but, as I apprehend, very little common sense. It proceeds mainly upon false assumptions. In the first place, the assignment does not contain an agreement, that the husband will reduce

the property into possession ; it merely transfers the chose in action, with authority to use the husband's name, at any time, for the collection of the debt, and the husband and wife's, at any time during the continuance of the coverture.

Again, it is said, the husband has the power of reducing it into possession ; but this is not true, to the extent claimed. He has the power of doing it, provided it is accomplished during the coverture ; but no such power afterward, if his wife survive.

While the marriage relation continues, the husband is bound to support his wife, and pay her debts, and the law gives him power to collect her choses in action, and for that purpose he may unite her name with his, in suits for the collection of those debts, and upon the sale of them, he may transfer that power to the purchaser; but the moment the marriage relation is terminated, the wife surviving, his power over her is gone, and all the power by him delegated to others.

In order to sustain the doctrine contended for, on the part of the assignee, English judges have been obliged to resort to some nice distinctions, in relation to assignments, made by husbands, of their wives' choses in action.

Thus it has been holden, that the rule does not extend to assignees in bankruptcy, or insolvency of the husband, or to assignees for the payment of the debts of the husband generally. Their power over such property, continues only during the coverture, and when that is terminated, the wife takes, if she survive. 2 Sto. Eq., § 1411.

Nor does it apply to the assignment of a reversionary chose in action, or other reversionary equitable interest. For it is said, that the assignment does not, and from the very nature of the thing, can not, amount to a reduction into possession, of such reversionary interests.

And it has been holden, that even a purchaser, for a valuable consideration, of the wife's chose in action, may, in

equity, be compelled to make a settlement out of the same, for her benefit.

Indeed, I think it may be laid down as a general rule, that the wife, surviving the coverture, will take all choses in action, belonging to her before the marriage, and not reduced into possession, whether any assignment of them has, or has not, been made by her husband. The only exception to that general rule, ever recognized, so far as my knowledge extends, is that in favor of a *bona fide* purchaser, for valuable consideration.

And, in order to support such an exception, a most extraordinary power must be considered as vested in the husband, that of compelling his wife to act as trustee for another, after the marriage relation is ended, and after every other power over her is forever gone.

Now, in my judgment, it is better, far better, to have one uniform rule, alike applicable to all assignments made by the husband, of his wife's choses in action, and thus avoid all nice and artificial distinctions, when no necessity for them exists.

I am aware, that principle is sometimes borne down by precedents, and did I consider the rule settled in England, that the title of the purchaser of the wife's chose in action, is superior to hers by survivorship, I should feel it my duty to yield to the rule, however unsatisfactory might be the reasons urged in support of it.

But, although different judges may have entertained different opinions upon the subject, I do not consider the rule to be there established, and I am not aware, that the question has ever previously been made, before our own courts. We therefore are at liberty to settle the question upon principle.

The best considered case which I have been able to find upon this subject, is that of *Purdew* v. *Jackson,* 1 Russ., 26.

Sir Thomas Plumer, in delivering his opinion in that case, said, "The assignee for valuable consideration, with notice,

Tuttle *v.* Fowler.

must take the right, as the husband had it.   He buys the chance of the husband's outliving the wife.   In whose name must the action be brought? what obligation is the wife under, to recover the debt for the assignee? or what right would he have to use her name for such purpose? The husband might contract, that the assignee should be at liberty to sue in his name, at any time, or in the name of him and his wife, during the continuance of the coverture, but could he give authority to a stranger, to sue in her name, after his own decease?  The debt is a chose in action,—the assignment can not alter its nature,—and, continuing to be a chose in action, it becomes the absolute property of the surviving wife."

This opinion of a very learned judge is acknowledged by eminent jurists, to be a very able one.   His reasoning, to my mind, has never been satisfactorily answered.   The rule recognized is a plain, simple one, applicable alike to all assignments of the wife's choses in action, and dispensing with all nice and unnecessary distinctions in relation to such assignments.   It is in harmony with a rule, repeatedly recognized by our courts, that the conveyance of a person attempting to convey a greater estate than he has, shall operate only to convey all his interest, without effecting the rights of others, not parties to the conveyance.

The rule, in my judgment, ought to govern in the present case, and I therefore can not concur in the opinion expressed by a majority of this court.

New trial not to be granted.