Young v, Wilkinson.

ELLEN YOUNG vs. WILKINSON, EXECUTOR OF DANIEL YOUNG,
DECEASED.

### HUSBAND AND WIFE. *Survivorship.*

1. Where, by a decree in Chancery the personal property of a wife is vested without restriction or limitation in her husband and herself and the same is reduced into possession by him, he becomes absolute owner of the same, and in the event of his death, his personal repre, sentative succeeds to the same, and there is no survivorship to his wife.

2. SAME. But, *semble*, that the rule would be different, if the husband died after the decree, and before reducing the property into possession.

CARUTHERS, J., delivered the opinion of the Court:

This is filed as a cross bill to that of Wilkinson as executor of Daniel Young deceased, for the administration of his estate under the insolvent laws, against his creditors and legatees. The complainant is the widow of the deceased, who, after dissenting from the will of her husband, asserts her right to the twelve slaves derived from her father under his will, against the executor and creditors of said Daniel Young deceased who claim them as a part of his estate.

This is the state of facts upon which the question

is made : Tazewell Hyde, the father of complainant, died in Davidson County in 1838, leaving a will with this provision : "In case my wife should marry again, then and in that case, it is my will and desire that such a division of my property shall take place as though I had died intestate." He owned a tract of 867 acres of land, and thirty-two slaves, with other property. In 1848, Ellen having married the said Daniel Young, and being then entitled to her undivided interest in her father's estate, united with her husband in a petition to the Chancery Court to have set apart in severalty to them, her part of the property. This was regularly done, and the court decreed in relation to the 210 acres of land and the seven slaves allotted to the petitioners Young and wife, as follows :

"And it is thereupon ordered, adjudged and decreed that the said slaves, so assigned to said Young and wife, be held by them absolutely, and that the part of the said tract of land assigned to the said Ellen Young, be held by her in severalty and in fee."

These seven slaves went into the possession of Young, and so continued until his death in 1859, he controlling and claiming them as his other property.

His widow now claims them under the decree of 1848 by right of survivorship. Her claim is supported by an earnest, learned and ingenious argument. The position assumed would seem at first blush to be entirely untenable; and such were our impressions. But the boldness and ability with which ground is taken and defended, imposes upon us the duty to examine it carefully in the light of the authorities cited on both sides.

It is not insisted that slaves, as regards this question, are placed upon the grounds of realty, so as to be capable of that peculiar estate by entireties which is vested in husband and wife by joint coveyance to them, by which the right of survivorship exists. But it is said to be analogous to to that, in a case like this, where by decree the slaves of the wife are vested in her and her husband jointly. It is admitted it would be different if by the decree, the right has been expressly given to him alone, for that it is said, would imply a consent on her part that he should have the property, and her right would be gone. To sustain this position we are referred first to the opinion of the Master of the Rolls, Langham v. Nenny, 4 Ves. 469. That was a case where by an ante-nuptial settlement, the wife's property consisting of £4000, of Bank and South Sea annuities, was vested in trustees upon certain specified trusts. And after the death of both, a contest arose between their representatives as to the right to the property. The husband was to have the dividends during their joint lives, and if she died first, t was to be his, and if she survived him, it was to be hers for life, subject at her death to go as he might direct, in the mode prescribed. She out-lived him, and he did not exercise the power of disposition. Under this state of facts, the question arose as to the right of their respective representatives. The Master of the Rolls held that it was a part of her personal estate. It is in reference to this kind of case, the opinion relied upon was given. It is doubtless correct in the principles laid down. It is said:

";By marriage the husband clearly acquires an absolute property in all the personal estate of his wife, capable of immediate and tangible possession ; but if it is such as can be reduced into possession by action only, either at law or in equity, he has only a qualified interest, such as will enable him to make it *absolute* by reducing it into possession ; but in regard to the former, (a chose in action,) if he does not do so it will survive to the wife. By chose in action, I mean a right to be asserted by action at law; but as to that which must be asserted by suit in equity, as where it is vested in trustees, who have the legal property, he has still less interest. He cannot reach it without application to a court of equity, in which he cannot sue without joining her with him, which perhaps a court of law might permit him to do, or at least to use her name, without her consent. But a court of equity will make him provide for her, unless she consent to give it to him. This is the wife's property conveyed to trustees."

We are unable to see anything in this opinion to support the argument in favor of Mrs. Young. The part of the opinion seized upon in the argument is that which declares that a court of equity will make provision for the wife in such a case, unless she consents to give it, (the equity sued for,) to her husband.

This expression is made the basis of the whole argument in this case. From it a deduction is made, that in all cases where a court of equity is resorted to by the husband with the wife, to obtain her property, her consent must appear to part with her right, or she still retains it, at least to some extent : not expressly in the record, but it is conceded, it may be by implica-

tion, as where the decree vests the title in him alone, in which case it is admitted her right would be gone. The remark in the opinion must be taken to refer to the case then in hand, where the wife's interest was arsely an equity, and her legal title in another, the trustees.

In was strictly a chose in action, and not tangible property.

In our case the property was slaves, and the legal title in the wife in common with others, and the object of the suit, was only for a division and possession in severalty of part. But we cannot apprehend it was only meant in that case to state the familiar principle, that the husband in a court of equity to recover his wife's property, would not be allowed to receive it without a provision for her separate use, denominated the "wife's equity," if she demanded it.

But surely if no such application was made, nor any action of the court in her favor, her consent to waive it would be presumed, and the right forever lost, upon the reduction of the property, to possession by aid of the court, as well as where it is obtained, without a resort to the courts. His right by virtue of the marriage, before qualified and imperfect, is made absolute by the possessions of the property. After that the wife cannot be heard to assert her equity as a right to a settlement, because the property is effectually changed from her to husband. All these principles are too familiar to be controverted by any one, and it would be doing injustice to the argument for complainant, to allow

it to be inferred, that they are therein disputed. But the assumption is, that nothing appears in the decree of 1848, to show that the wife consented to part with her right to the slaves, in favor of her husband, but that the contrary is shown by the fact that the title is expressly decreed to them jointly. We are utterly unable to see the force of this argument, even by the light of this or any other authority cited. If the decree had vested the title in the wife alone, without coupling the name of the husband, in the absence of any settlement to her separate use, it would seem too clear for debate, that possession under that decree would make his right absolute and that hers would be entirely lost. This would be clearly so, where personal property is conveyed to the wife by deed. Hers comes by will, or by the law of distributions.

Can the fact that his name is united with her's in the decree or deed, weaken his right, or strengthen hers?

It would seem to operate the other way, if it had any effect at all. In the case of Lasseter v. Turner, 1 Yerg. 413 to 430, this whole doctrine is examined by the court and Judge Whyte in one of his elaborate opinions, exhausting the subject as was his habit, by citation of all the ancient authorities, including those relied upon by complainant's counsel in this case. The case of Forbes v. Phillips, 2 Eden Chan. Rep. 335, does not in the least help the complainant.

That case only decides that where an interest of the wife in a devise or bequest, was settled in a suit for that purpose, and by the decree vested in "Thomas Ickyll and his wife," the same "vested absolutely in

the husband". This would seem to be directly against the complainant. But in the reasoning of the court it is said that a decree is equal to a judgment at law, which operates to vest the property, joint or separate, pursuant to the decree, and even an award is sufficient for that purpose. Oglander v. Boston, 1 Ver. 396. The Court remarks as to the case cited from Vernon that the sum found by the arbitrators to be due to the wife, was awarded to be paid to her husband, and before payment to him, he died and the wife claimed it by survivorship. But the Lord Chancellor said, "the award is a sort of judgment, and that has changed the property, and vested it in the husband." The Court further said in the same case: "If there be a bond debt due the wife, the husband may sue without joining his wife, but if the wife is joined, and judgment recovered, it will survive to the wife, but not being joined, the judgment will vest in the husband."

This fully explains what the Court meant in the first part of the pargaraph, where it said the property will be vested jointly or separately, according to the judgment or decree. That is, if the decree vest the property in both husband and wife, and the former dies before reduction to possession, the latter will take by survivorship, or if the expression be preferred, by force of the decree. But on the other hand, if the judgment, decree, or even award, is in favor of the husband alone, the property is changed and her right is gone, even if he die before the execution of the judgment or decree, by obtainting possession of property, or money under it. In the other case, that is, where the decree or judgment is joint, and the husband dies

before the execution or possession, her right is saved. This we understand to be in conformity to all the authorities, or at least, to be definitely settled by them; for some diversity may be found on almost every question. The case of Steygate v. Armstong, in 3 Browns Chan. Rep. Perkins' edition, 362, Mar. Top. 298, only holds, that where a sum of money has been ordered to be paid to the husband, in right of his wife, it was a vested interest in the husband; and though he died before payment, yet, his executor would prevail over his surviving wife. This of course would have been different, if the degree or judgment had been joint, and the husband had died before payment. In a note to this case, the authorities are well collected, and the doctrine we have stated sustained.

The elementary books on this subject are equally explicit, and to the same effect. We need not refer to them, or even cite our own cases, in which we understand the same principles to be recognized and applied.

It is not meant to say, that the question in this precise aspect, has been presented to this court, but that the principles of the case referred above in 1 Yerger and the succeeding cases, must govern this. This is simply a case, to put it in the strongest aspect, where by a decree, the personal property of the wife, is vested in husband and wife, without restriction or limitation, and the same is reduced to the actual possession of the husband ten years before his death. Can there be any doubt, but that the property was changed by the possession, and her right forever and in all events extinguished; (1)

(1.) Lasseter v. Turner, 1 Yerg. 418; Bryant v. Pucket, 3 Hayw. 252; Co. Litt, 351 B. Clancy Hus. & W. 111; 2 Kent Com. 135. The cases are

If the husband had died after the decree, and before
the slaves came into his possession, the case would have
been very difficrent, because the decree vested title jointly.
The chancellor came to the same conclusion, and we
affirm the decree. (2)

*Decree affirmed.*

too numerous to cite, even in a note.  But see Squib v. Wyn, 1 P. Wms.
378, 381; Bates v. Dandy, 2 Atk. 207; Jewson v. Moulson, 2 Atk. 417;
Saddington v. Kinsman, 1 Bro. Ch. R. 44; Elliott v. Collier, 3 Atk. 526;
Boucher v. Taylor, Harg. Law Tr. 473; Little v. Marsh, 2 Ired. Eq. 18;
Estate of Hinds, 5 Whart. 138; Goohenauer's Estate, 23 Penn. 460
Barron v. Barron, 24 Vt. 475; Nolen's Appeal, 23 Penn. 37; Gallego v.
Gallego, 2 Brock. 285; Shaw v. Mitchell, Daviess D. C. Rep. 217.

As to what circumstances constitute a reduction of the wife's choses
in action into possession by the husband, so as to bar the wife's sur-
vivorship, see the English authorities methodically collated in Clancy
on Husband & Wife, page 109 *et seq.*  See also Schuyler v. Hoyle, 5 Johns.
Ch. R. 196; Bartlett v. Van Zandt, 4 Sandf. Ch. R. 396; Latourette
v. Williams. 1 Barb. S. C. Rep. 9.

The husband may *release* his wifes chose in action.  Gallego v. Gal-
lego, 2 Brock. 485: Belcher v. Hudson, Cro. Jac. 222; 1 Roper Hus. &
W. 227, 237.  And he may *assign* it for a valuable consideration.  Bay-
erque v. Haley, 1 McAl. 97; Schuyler v. Hoyle, 5 Johns. Ch. R.
196; Tuttle v. Fowler, 22 Conn. 58; Mitford v. Mitford, 9 Ves. 98;
Saddington v. Kinsman, 1 Bro. Ch. R. 44; Lowry v. Houston, 3 How.
U. S. 394: and numerous other cases.  But, *contra*, Crittenden v. Posey,
1 Head. 311.

It seems that if the husband or his assignee can get possession of the
wifes choses in action, his right is absolute. Dearin v. Fitzpatrick, Meigs
551, 560, Reporters note *sub fin.*  But if he seek the aid of chancery for
this purpose, he will be compelled to make suitable provision for her
out of her estate, known as the wifes equity.  2 Story Eq. 1413; Clan-
cy Hus. & W. 440, *et seq*; 2 Kent, Com. 138 *Eq seq.*  Dearin v. Fitzpat-
rick, *ubi supra.*  Or if the wife sue directly for the same.  *Ibid.* and so
Farnsworth v. Lemons, 11 Humph. 140; Scott v. Hix, 2 Snced, 192;
Smith v. Greer, 3 Humph. 118; McElhatton v. Howell, 4 Hayw. 19;
Wilks v. Fitzpatrick, 1 Humph 54; Embry v. Robinson, 7 Humph. 144.

(2)  Phipps v. Angelesea, 1 Fonb. 89; Bond v. Simmons, 3 Atk. 20;
McCauley v. Philips, 4 Ves. 15; Mitford v. Mitford, 9 Ves. 87; Hartman
v. Dowdel, 1 Rawle, 279; Burnett v. Kinnaston, 2 Vern. 401.