## Case No. 3,658.

### DAVIS v. WEED.

[44 Conn. 569; 2 Nat. Bank Cas. (Browne) 115.]

### District Court, D. Connecticut. 1877.

ADMINISTRATORS—CLAIMS PRESENTED AFTER SETTLEMENT — ASSESSMENT ON NATIONAL BANK STOCK—LIABILITY OF ESTATE.

[1. Under the Connecticut statutes, real and personal estate are alike a fund for the payment of debts, and both are assets in the hands of the administrator.]

[2. Failure to exhibit against a solvent estate, within the time limited for presentation of existing claims, a claim which accrued after the limitation expired, is not a bar to its payment, provided it be presented within one year after it accrued. Following Hawley v. Botsford, 27 Conn. 80; Bacon v. Thorp, Id. 251.]

[3. The order of a court of probate settling the administrative account, and the distribution of real or personal estate to the heirs, do not prevent such estates being subjected to the payment of a debt of the solvent intestate which accrued after the settlement of the estate. Distribution is not necessarily the final consummation of the administrator's powers, and is not necessarily a complete settlement of the estate. Following Griswold v. Bigelow, 6 Conn. 258; Seymour v. Seymour, 22 Conn. 272; Booth v. Starr, 5 Day, 419.]

[4. Where an administrator of a solvent estate denies the validity of a claim against the estate accruing after the time appointed for the exhibition of existing claims, or after distribution, it is necessary that the validity of the claim should be determined by suit thereon against the administrator before a court of common-law or equity jurisdiction. A court of probate has no original jurisdiction to allow or reject disputed claims against a solvent estate.]

[5. A receiver of an insolvent national bank has a valid claim for an assessment against the estate generally of a deceased stockholder, who died prior to the insolvency of the bank, but whose stock had not been transferred at the date of the comptroller's order making the assessment.]

[6. Rev. St. § 5152, does not affect the liability of the estate of a deceased stockholder in a national bank to an assessment on the shares while such estate is in course of settlement. The principal object of that section was to prevent a personal liability from running against executors, administrators, trustees, or guardians, who

had purchased as trustees, or in whose names stock belonging to the trust estates had been placed.]

Walter Howe and T. M. Davis, for receiver.

Samuel Fessenden and Henry C. Robinson, for defendant.

SHIPMAN, District Judge. This is an action at law brought by [Theodore M. Davis] the receiver of the Ocean National Bank, of the city of New York, to recover an assessment which is claimed, under the facts hereinafter stated, to be due from the defendant [Harvey H. Weed] as administrator de bonis non of the estate of Nathaniel Weed. The parties agreed by stipulation in writing, waiving a jury, that the case should be tried by the court. The pleadings subsequently terminated in a demurrer to the special plea of the defendant.

The declaration alleges the organization of the Ocean National Bank, of the city of New York, as a national banking association; its failure on December 12th, 1871, to pay and redeem its circulating notes; the protest of said notes; the appointment of the plaintiff as receiver by the comptroller of the currency; the plaintiff's acceptance of said office; the ascertainment by the comptroller that the assets of the bank are insufficient to pay its liabilities, and that it is necessary to enforce the individual liability of the stockholders; the order of the comptroller, dated January 19th, 1877, making an assessment of forty per cent. of the par value of the shares held by each shareholder, payable in two instalments, to wit, $10 per share on February 26th, 1877, and $10 per share on April 26th, 1877; and the order of the comptroller to institute suits for the enforcement of said liability. The declaration further alleges as follows: About the time of the failure of said bank, Nathaniel Weed died intestate, leaving a large real and personal estate; at the time of said failure he was the owner of 514 shares of said bank; on or about September 9th, 1872, Harvey A. Weed was duly appointed administrator of said estate; subsequently Harvey A. Weed died, and on or about December 3d, 1872, the defendant Harvey H. Weed was duly appointed administrator de bonis non upon the estate of Nathaniel Weed, who accepted said trust, and is now said administrator; demand was made on March 22d, 1877, and on June 12th, 1877, for payment of said respective instalments, and by reason of the premises the defendant is liable to pay said assessment.

The defendant pleaded specially the following facts: The said Nathaniel Weed died in January, A. D. 1871, intestate. That afterwards, on the 9th day of September, A. D. 1872, one Harvey A. Weed was duly appointed and qualified as administrator of his (said Nathaniel's) estate; six months from the date of said appointment was by the court of probate for the district of Stamford, which was the domicile of said intestate, limited as the

time for creditors to present their claims against said estate; no claim in behalf of this plaintiff was rendered by said administrator; all claims theretofore presented against said estate were paid and settled, and said estate was settled according to law. Afterwards said Harvey A. Weed died, and on the 3d day of December, A. D. 1872, defendant was appointed administrator of the estate of said Nathaniel which had not been already administered; the defendant hath fully administered all and singular the goods, chattels and estate which were of the said Nathaniel Weed, deceased, at the time of his death, and which have never come to the hands of the said defendant administrator, &c., to be administered; and the said defendant hath not, nor on the day of the plaintiff's writ in this behalf, or at the time of commencing this suit, or at any time since had, any goods, chattels or estate which were of said Nathaniel Weed at the time of his death in the hands of said administrator, &c., to be administered. And the defendant has not now, and did not on the day of the demand set up in plaintiff's writ, nor at the commencement of this writ, nor at any time since either of said dates have in his hands any estates or funds belonging to the estate of said Nathaniel Weed. or which were said Nathaniel Weed's at the time of his death. Said Nathaniel Weed's estate, after the death of said Harvey A. Weed, was treated as the estate of said Harvey A. Weed, and distributed among his heirs at law.

In this state of pleadings, the defense is two fold: 1st. It being admitted that the estate of Nathaniel Weed had been settled according to law prior to the demand, and that there were no assets in the hands of the administrator at the time of the demand, and that he has fully administered the estate, and that no assets have come to his hands as administrator since the demand, no judgment can be rendered against him. 2d. That, inasmuch as the insolvency of the bank occurred after the death of the intestate, when the title of the stock became vested in the administrator, no debt or liability existed at any time against the estate; that the liability, if any, was against the administrator, who by section 5152 of the Revised Statutes is freed from personal liability, and is only liable to the extent of the trust estate and funds in his hands at the time of the demand. The plaintiff does not claim that a judgment de bonis propriis can be rendered against the defendant.

I. The first question requires an examination of the statutes of Connecticut in regard to the settlement of estates, and in regard to the presentation, allowance and payment of claims against the estates of solvent deceased persons. The settlement of estates in Connecticut is regulated by statute. A time is limited by the court of probate for the exhibition of claims against the estate of a deceased person which is represented by the executor or administrator to be in-

solvent, and every creditor who has not exhibited his claim within the time limited is debarred unless he can show some estate not in the inventory. In the case of an estate which is actually insolvent, the proceedings under the orders of the court of probate, by which all the estate has been actually paid to the claimants who have proved their claims within the limited time, are a bar to claims which subsequently accrue and have not been proved. But it is provided that, where an estate which has been represented insolvent turns out to be solvent, "the rights of all persons having claims against such estate subsequently accruing, and which shall not have been exhibited to the commissioner within the time limited for the exhibition of claims, shall be the same in respect to any estate of such deceased person remaining after the payment of the claims allowed by them, as they would have been in regard to such remaining estate, if said estate had always been treated as a solvent estate." Existing claims against a solvent estate must be presented to the representatives of the estate within the time limited by the court of probate; "but any creditors not inhabitants of this state may exhibit their claims against any estate which has not been represented insolvent, at any time within two years after publication of such notice, and shall be entitled to payment only out of the clear estate remaining after the payment of the claims exhibited in the time limited; and when a right of action shall accrue after the death of the deceased, it shall be exhibited within twelve months after such right of action shall accrue, and shall be paid out of the estate remaining after the payment of the debts exhibited in the time limited." Rev. St. § 5, pt. 3, c. 2, tit. 18, p. 388. "When the creditor of an estate, not represented insolvent, shall present his claim to the executor, or administrator, within the time limited by the court of probate, or by any of the provisions of the preceding section, and he shall disallow and refuse to pay it, if such creditor shall not, within four months after he has been notified by him that his claim is disallowed, commence a suit against him for the recovery thereof, he shall be debarred of his claim against such estate." Rev. St. § 6, pt. 3, c. 2, tit. 18, p. 388. Intestate solvent estates, after deducting the debts and the expenses of settlement, may be distributed to the heirs by persons appointed by the court of probate, and "every person to whom any part of an estate shall be distributed, and every person to whom any estate shall be devised or bequeathed, when no sufficient provision is made by will for the payment of the debts out of some particular estate, shall give a bond to the state, with surety, to the acceptance of the court of probate, conditioned that if after the settlement of the estate, debts shall appear and be allowed, he will pay to the executor or administrator his proportional part of such debts, and of the charges of the executor or administrator." Rev. St. p. 374. The provision for the giving of a bond is cumulative; the bonds are not the only fund for the payment of debts which are properly allowed after the settlement of a solvent estate. Griswold v. Bigelow, 6 Conn. 258. No suit, except for debts due to the United States or to the state, or for the expenses of the last sickness or funeral charges, can be brought against the executor or administrator of an insolvent estate in course of settlement. Suits against the representatives of a solvent estate are not prohibited. The two provisions which have been mentioned in regard to the payment from a solvent estate of the debts which accrue after the expiration of the time limited for the presentation of existing claims, viz. the provision for payment of a claim accruing after the death of the deceased, if exhibited within one year after the right of action accrued, and the provision requiring heirs to give a counter bond for the payment of debts which appear after the distribution of an estate, clearly indicate that the liability of the solvent estate of the deceased person does not cease with the settlement of the estate, as to those claims which accrue after the time limited for the presentation of existing claims. If the settlement of an estate and its distribution is a bar against the liability of the estate, or against the liability of a representative de bonis testatoris, no bond from the heirs would have been required. From the statutes which have been cited, and the Connecticut decisions upon the statutes, the following principles are deduced:

1. In Connecticut, real and personal estate of the person are alike a fund for the payment of his debts, and both are assets in the hands of the administrator.

2. The non-exhibition against a solvent estate, within the time limited for the presentation of existing claims, of a claim which accrued after the expiration of such limitation, is not a bar to its payment, provided it is exhibited within one year after it accrues. Hawley v. Botsford, 27 Conn. 80; Bacon v. Thorp, Id. 251.

3. The order of a court of probate settling the administrative account, and the distribution of real or personal estate to the heirs, does not prevent such estates being subjected to the payment of a debt of the solvent intestate, which accrued after the settlement of the estate. Distribution is not necessarily the final consummation of the administrator's powers, and is not necessarily a complete settlement of the estate. Griswold v. Bigelow, 6 Conn. 258; Seymour v. Seymour, 22 Conn. 272; Booth v. Starr, 5 Day, 419.

4. Where an administrator of a solvent estate denies the validity of a claim against the estate accruing after the time appointed for the exhibition of existing claims, or after distribution, it is necessary that the validity

of the claim should be determined by suit thereon against the administrator before a court of common-law or equity jurisdiction. A court of probate has no original jurisdiction to allow or reject disputed claims against a solvent estate. It will not be denied that this is true in regard to existing claims which are presented before the expiration of the limitation, and I do not see why the necessity of suit against the administrator does not exist in the case of subsequently accruing claims, provided he denies their validity. If he "disallows the claim" the creditor must commence suit within four months after notification of the disallowance, and the suit must be one in which the validity of the claim can be determined. Spalding v. Mutts, 6 Conn. 28. The suit must be in a court of ordinary jurisdiction, for courts of probate have no original power to decide upon the validity of claims which are disallowed by the administrator of a solvent estate. Isaacs v. Stevens, 13 Conn. 499; Bacon v. Thorp, 27 Conn. 251. If the administrator, as in Griswold v. Bigelow and in Seymour v. Seymour, admits the validity of the claim, and pays it, or, the personal estate having been exhausted, seeks an order of the court of probate to sell real estate for the purpose of payment, the validity of the claim is collaterally passed upon by the court of probate, by its approval or disapproval of the item in the administration account, or by granting or refusing an order to sell real estate. If the administrator disallows an unadjudicated claim, the court of probate cannot compel payment. The question whether a suit can be sustained against an administrator upon a claim which accrued after distribution, and when all the estate had been distributed before the claim accrued, has not arisen before the supreme court of errors of this state, except in the case of Booth v. Starr, 5 Day, 275, a case which was decided by a divided court, and the authority of which has been much shaken by subsequent decisions. In Griswold v. Bigelow, the first administrator had died, and a new one was appointed, who allowed the accruing claim upon presentation. In Seymour v. Seymour, the administrator was himself the creditor, and allowed his own claim. In Bacon v. Thorp, unadministered estate was in the hands of the executrix of a solvent estate which had been represented insolvent. In Hawley v. Botsford, undistributed real estate was in the hands of the two sons of the intestate, one of whom was the administrator. Dower had been set out to the widow. In the latter case, it is decided that a bill in equity to compel all the heirs to pay a debt which accrued after the limitation will not lie, there being adequate remedy at law. What the remedy may be is not stated, but, as it is substantially held in Bacon v. Thorp that the court of probate is not the tribunal in which relief can be originally sought, the inference is that the first step is to have the validity of the claim ascertained in an action at law against the administrator. While the precise point which is now under discussion has not been judicially settled in Connecticut, two things have been established: 1st. The court of probate has no original jurisdiction in regard to a disputed claim against a solvent estate; and, 2d, a bill in equity against heirs will not lie to compel payment from their real estate of a claim accruing subsequently to distribution. The tendency of the decision since Sacket v. Mead, 1 Conn. 13, is in support of the mode of procedure which I have pointed out. It may be urged that the administrator, having settled his administration account, and having distributed the estate, is functus officio, and that it is necessary for the creditor to apply to the court of probate for the appointment of a new administrator. Distribution, as has been said, does not necessarily exhaust the administrator's powers. If he is living, he is still the representative of the estate, and if he is competent and willing to act there is no necessity of a new appointment. He has not ceased to be administrator from the fact that his account has been approved, and that the estate which was in his hands at the time of the settlement of the account has been distributed. If new personal assets should be discovered, the title would vest in him, and he would be the person to reduce such estate to possession. If it should be ascertained that a debt theretofore undiscovered was due the estate, he is authorized as administrator to commence suit for its recovery. It is believed that the court of probate cannot appoint a new administrator until there is a vacancy by death or removal or resignation.

5. The system of the settlement of estates in Connecticut differs so materially from the method of settlement in England, that the system of pleading by an executor or administrator in Connecticut differs also materially from that which was in use at common law. By the common law, when the estate was insolvent, the representative was obliged to pay debts in a particular order, and, among creditors of equal degree, could pay one in preference to another, although this election was in a degree controlled by legal or equitable proceedings. The real estate was not liable in the hands of an executor to pay debts, but the heirs and devisees were liable upon specialties. Swift, Dig. 459. The plea of plene administravit, or want of assets at time of suit brought, was adapted to this system. In Connecticut, if the estate is insolvent, there should be a representation of insolvency. So soon as that fact appears, and thereafter, the payment of debts is conducted under the orders of the court of probate. So long as the estate is solvent, the debts which accrue after the expiration of the time for presentation of existing claims are a valid claim against the estate; if these are presented within one year from the time the debts accrue. Plene administravit is a good plea by an executor de son tort (Olmsted v. Clark,

30 Conn. 108), and want of assets is pleadable in an action against an executor for a legacy (Knapp v. Hanford, 7 Conn. 132). But says Judge Swift, in speaking of the statutory system of Connecticut for the payment of debts, "I can imagine but one instance in which the executor or administrator can avail himself of the plea of plene administravit. Debts due to the state and the expenses of the last sickness and the funeral are preferable debts; if the whole estate should be absorbed in discharging these debts, it would be useless to proceed in the settlement of it as an insolvent estate; and if a suit should be brought by a creditor against the executor or administrator for a debt, he might plead this in bar." 1 Swift, Dig. 459; Bennett v. Ives, 30 Conn. 329; Bacon v. Thorp, 27 Conn. 251; Griswold v. Bigelow, 6 Conn. 258. So, also, in England, a judgment against an executor de bonis testatoris is equivalent to a finding that he has assets. In Connecticut, a judgment is a finding that the estate of the deceased is liable to pay the claim which is sued upon. If the claim accrues and is presented after distribution, and payment is refused by the executor, it is incumbent upon the creditor to bring suit within four months after refusal. Suit is brought that the validity of the claim may be adjudicated. The question of assets is not before the court. The judgment shows that there is a valid claim against the estate of the deceased. In what manner payment may be obtained, it is not my province now to decide, but the authorities which have been cited show that, when the statute declares that the after accruing claims "shall be paid out of the estate remaining after the payment of the debts exhibited in the time limited," it is not meant that the estate remaining at the date of the judgment in the hands of the executor as executor is the only fund from which the claimant can enforce payment, and, if that has been distributed to the heirs, he is remediless. When an action is brought against an executor of a solvent estate, judgment is properly rendered for the whole demand, "for these, if for no other, reasons: That it was found justly due; that other assets might afterwards be discovered; and that if the estate should be, as it was afterwards represented to be, insolvent, the plaintiff might be enabled to obtain his dividend upon his whole demand." Tweedy v. Bennett, 31 Conn. 276. In this case, the bank became insolvent in December, 1871, an assessment was made upon the stockholders by the comptroller of the currency on January 19th, 1877, demand was made of the plaintiff on March 22d, 1877, and June 12th, 1877, and suit was commenced July 14th, 1877. Until the order of the comptroller of the currency the claim was contingent. He ascertains and decides how much shall be collected, and until his decision the receiver has no power to enforce a liability against the stockholders arising out of their stock. The action of the comptroller "is indispensable whenever the personal liability of the stockholder is sought to be enforced, and must precede the institution of a suit by the receiver." Kennedy v. Gibson, 8 Wall. [75 U. S.] 498. The claim accrued at the date of the comptroller's order, the amount to be paid was there liquidated, and by the terms of his order became due and payable. Until his order, the amount, if any, to be paid, was not due. Casey v. Galli, 94 U. S. 673.

II. The defendant next insists that, inasmuch as the intestate died previous to the insolvency of the bank, there was at the time of his death no claim contingent or otherwise against his estate; that the title of the stock vested by operation of law in the administrator upon his appointment; that the assessment is against stockholders and that, therefore, the liability has accrued against the administrator, who holds the stock as trustee; that, by section 5152 of the Revised Statutes, he is freed from personal liability, and that the estate only which is in his hands is liable for payment; and that it is admitted by the pleadings that the defendant has no estate or funds in his hands. The action is based upon the theory that the claim is against the estate of the intestate as an estate in process of settlement. and, under the facts in the case, the question arises whether a receiver of an insolvent national banking association has a valid claim for an assessment against the estate generally of a deceased stockholder, who died prior to the insolvency of the bank, but whose stock has not been transferred at the date of the comptroller's order. The defendant contends that the receiver never had a claim against the estate of Nathaniel Weed, but that his claim is against existing stockholders, and that the title to the stock vested in the administrator September 9th, 1872, and related back to the date of the intestate's death. It is true that the title to personal property of an intestate vests in Connecticut in his administrator, by force of local law and the grant of administration, but I think that the claim of the defendant, although ingenious, is not tenable, for the following reasons:

1. "An executor or administrator has his estate as such in auter droit merely, viz. as the minister or dispenser of the goods of the dead." 1 Williams, Ex'rs, 562.

2. The original liability of the intestate to pay the assessments which may be ordered by the comptroller was a voluntary agreement, evidenced by his subscription or by his becoming a stockholder. It is not imposed by way of forfeiture or penalty. It is imposed by the statute, but it also exists by virtue of the contract which the intestate entered into when he became a stockholder. When the stockholder dies, his estate becomes burdened with the same contract or agreement which the dead man had assumed, and so long as it, through the ex-

-ecutor or administrator, holds the stock as the property of the estate, and the stock has not been transferred on the books of the bank, and the liability has not been dis-charged by some act which shows that the new stockholder has taken the place of the old one, the contract liability still adheres to the estate. This liability is not the result of any new contract, for the administrator did not voluntarily become the owner of the stock; it came to him as the dispenser of the goods of the dead, and the liability rest-ed upon the stock, and was a part of the con-tingent liability of the estate, at least until it was transferred to some other person by a transfer free from fraud. Corning v. Mc-Cullough, 1 Comst. [1 N. Y.] 47; Bailey v. Hollister, 26 N. Y. 112; Lowry v. Inman, 46 N. Y. 119; Hawthorne v. Calef, 2 Wall. [69 U. S.] 22; Gray v. Coffin, 9 Cush. 192.

3. When an obligation devolves upon an executor solely by virtue of his successor-ship to the estate, and not by express con-tract or agreement of his own, the estate is liable. If an executor is liable to pay an obligation resting upon personal property, which came to him from the testator, and of which the executor is the owner only as a representative of the estate, and which obli-gation is due from him solely because he represents the estate, he is liable as exec-utor, even if suit might have been also brought against him personally. East Hart-ford v. Pitkin, 8 Conn. 404, per Williams, J.

4. I do not think that section 5152 was in-tended to affect the liability for assessments of estates in process of settlement. The principal object of the section was to prevent a personal liability from running against ex-ecutors, administrators, trustees or guard-ians who had purchased as trustees, or to whom had been transferred in their names, as trustees of national bank stocks for the benefit of the trust estates. Having by such purchase voluntarily entered into a contingent liability for assessments, it might be claimed that a judgment de bonis pro-priis could be rendered against them. The main object of the section was to prevent personal judgments being rendered against such persons in whom the stock stood on the books of the bank, as trustees.

I am therefore of opinion that the facts al-leged in the plea are not a valid defence to prevent a judgment against the defendant from the estate of the intestate. As it is not suggested that the defendant has any other ground of defence, the demurrer is sustained, and judgment should be rendered against him as administrator de bonis non, from the estate of the intestate, for the sum of $10,280, with interest on $5,140 thereof from February 26th, 1877, and on $5,140 thereof from April 26, 1877, at six per cent.